## BRUMBERGER v. BURKE.
### No. 4643.

Circuit Court of Appeals, Third Circuit.

Feb. 11, 1932.

William P. Braun, of Newark, N. J., for appellant.

Norbury C. Murray and Charles C. Trelease, both of Newark, N. J., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

Alfred Brumberger is a dentist. Burke, his patient, sued him, averring negligence in attempting, unsuccessfully, to extract a tooth, in failing thereafter properly to treat the wound and in not immediately extracting the tooth himself or advising its extraction by another. Infection set in (either before or after the operations), followed by the disease of osteomyelitis. Burke had a verdict and judgment; Brumberger appealed.

On appeal the case was argued mainly on the merits as though we had power to correct errors of the jury on controverted issues of fact. We must, of course, on the errors assigned in refusing a nonsuit and later in refusing the motion for a directed verdict, limit our review to the sufficiency of the evidence, first, to submit the case, and next, to sustain the verdict, and to the correctness of the court's rulings on the evidence and instructions on the law.

The plaintiff, according to his testimony, had been suffering from toothache. He consulted the defendant who, without taking an X-ray and after administering nitrous oxide, undertook to extract the tooth. The attempt proving unsuccessful, the defendant took an X-ray, which was of little help. He readministered nitrous oxide and tried again, and again did not succeed. The defendant then administered ether and on the third attempt failed to extract the tooth. As the plaintiff had by this time been in the defendant's office about four hours, was suffering much pain, and was not in condition to stand further operations, the defendant, without prescribing further treatment, told him to go home and that within four or five days the pain would subside and, being loosened, the tooth would in time "amoliate," that is, "come out by itself." The pain growing worse, the plaintiff in three days returned to the defendant who arranged to have the tooth extracted by a specialist. This was done on the fourth day.

A later diagnosis disclosed osteomyelitis of the jaw from which the tooth had been extracted.

Osteomyelitis is a disease which is caused by invasion of the bone by germs, mainly from the mouth. A tough fibrous membrane —the periosteum—immediately under the

gum covers the bone and normally prevents such invasion. If the periosteum is cut or broken down from some cause or other, as by a loose tooth or contact with dental instruments, and not properly treated, the bone is exposed to osteomyelitic germs, invasion of the bone sets in and osteomyelitis may follow.

**■ Points One and Two.** That the plaintiff had osteomyelitis is certain, but there were sharp issues of fact as to whether he already had it before he consulted the defendant, which was possible, or whether it was occasioned by the unsuccessful operations of the defendant, his alleged lack of post-treatment of the wound, his failure to prescribe home treatment or to advise the immediate removal of the tooth conformably with sound practice.

The defendant, by his testimony, contradicted the plaintiff on all points imputing negligence. What were the exact facts we do not know nor have we power to decide. That was the sole function of the jury, and their decision is final if based on sufficient evidence. The jury could, if they saw proper, reject the evidence of prior infection, and they could find, as they did, that the disease was occasioned by negligence of the defendant in the operations and treatment if the evidence was sufficient. That evidence need not be direct; it need only be circumstantial and is enough if it develops permissible inferences of the fact. Of course no one, doubtless not even the defendant, saw the periosteum, and consequently no one knows certainly whether it was injured by the dental instruments; but from the obstinacy of the tooth, the difficulty of extraction, the repeated attempts to extract it, the power applied, the injury to the hand of the operator, the consequent pain and pus in the jaw, there was enough evidence to support a finding that the periosteum had been injured during the operations; and upon the contention that the wound was not properly treated and the offending tooth not promptly removed, there was enough evidence to justify the jury in finding that osteomyelitis developed after the operations, that it was the sole and proximate result of an injury to the periosteum and that the injury to the periosteum was proximately caused by negligence in the extraction of the tooth and in lack of treatment of the wound.

We find no error in the court's refusal of the defendant's motion for a nonsuit or in its refusal of his motion for a directed verdict.

**■ Point Three.** The defendant assigns error in the court's refusal to charge his fifth request as follows:

"In addition to proving negligence on the part of Doctor Brumberger, the plaintiff in order to recover must establish to your satisfaction that the negligent act was the proximate cause of the plaintiff's injury, and unless the result is connected with the alleged cause as a reasonable probability, your verdict must be for the defendant regardless of whether or not the plaintiff has proven some negligent act."

The learned trial judge refused this request without comment, in the belief, we surmise, that he had covered the point in his charge. He had instructed the jury in regard to the plaintiff's burden of proof by preponderance of evidence, adverted to the plaintiff's contention that the disease "was caused proximately by the acts of the defendant" and submitted the issue not only whether the defendant failed to exercise due care but whether the disease "was caused proximately by his act" under an instruction that if they found negligence and that "the disease was a proximate result of that failure to exercise care" and "that these injuries were proximately caused by him," then they should pass to the question of damages.

If the court failed adequately to charge on the question of "proximate cause," the same infirmity is to be found in the plaintiff's request to charge. While we do not find error, in view of this fact, we feel constrained to say that "proximate cause," standing in and by itself, is an expression of legal significance with which the average juryman is wholly unacquainted. It is therefore the duty of a trial judge, where the question of "proximate cause" is involved, to explain to the jury in simple terms what the law means by that expression and to illustrate the application of its legal principles to the facts of the particular case which he is trying. Coupling an explanation of these legal principles with the facts of the particular case on trial is desirable, indeed, is necessary, in order that the jury may fully understand the line of their duty and how to perform it.

**■ Point Four.** The defendant assigns error to the court for not charging his sixth request to the effect that, without regard to whether the jury should find the defendant guilty of negligence, if they also find the plaintiff was "guilty of neglect or carelessness, which, in any degree, contributed to his injuries, either by neglecting to seek dental

attention until he was already infected, or in failing to carry out instructions given him (by the defendant) with respect to treatment," the verdict should be for the defendant.

We agree with the learned trial judge that the way the issues in this case developed at the trial there was little, if any, question of contributory negligence. The question—one of causation rather than contributory negligence—was whether the disease was already in his jaw when the plaintiff consulted the defendant or whether the defendant by negligence either in operating or in treating the tooth proximately caused it. Moreover, there was a sharp conflict as to whether treatment by a mouthwash was prescribed. The plaintiff said the defendant prescribed none; the defendant said he prescribed some. On this issue, primarily one of causation, the question of negligence turned in part, and it turned more particularly on other testimony to the effect that, even if prescribed, a mouthwash, being superficial and the disease being deep seated, would do nothing to prevent it, certainly nothing to cure it. We find no error in the court's refusal to charge the sixth request.

Point Five. The defendant assigns error to the trial court in refusing to charge his seventh request which was to the effect that if the jury should find that it was just as probable that the plaintiff's injuries were caused by some independent condition for which the defendant was not responsible, the verdict must be for the defendant.

We think this request was properly refused because the court had submitted in the alternative the possible causes of the disease. If the disease had settled in the plaintiff's jawbone before he consulted the defendant, the court's instruction was inferentially a verdict for the defendant, although it did not say so in terms. That was the only possible inference, plain enough to the average juror. If the disease followed the attempted extraction, the court submitted to the jury the question whether the plaintiff was negligently operated upon and treated, and whether such negligence brought about the disease, without saying in terms that, if so, the verdict should be for the plaintiff. We find no error here.

Point Six, concerning the court's refusal of the defendant's eighth request, turns on the question whether osteomyelitis was the result of the defendant cutting down into the periosteum.

The request was properly denied because it was, without warrant, predicated on an assumption that the plaintiff had produced no evidence to prove that fact and its effect.

Point Seven is directed to remarks, claimed to be prejudicial, made by the court in the presence of the jury when counsel was interrogating a witness at length concerning the gravity of the condition of the plaintiff's jaw already proved to be very serious. The court said:

"Here you have a genuine injury of a serious character. Nobody disputes it. The jury will surely think it is serious. Why try to embroider it?"

We do not regard the remark prejudicial for, paraphrasing it somewhat, it was in effect nothing more than an inquiry: "Why emphasize what has already been proved?"

Point Eight. This point charges error to the court in allowing and admitting an answer to the question:

"What would good dentistry and good dental practice as understood by the average general practitioner require?"

The defendant complains of the use of the word "average." This question and another like question were directed to the degree of care and skill required of dentists in practicing their profession with respect to which the court, quoting from a case in the Court of Errors and Appeals of New Jersey, later instructed the jury that:

"The degree of care, skill and diligence required of dentists is not the highest order of qualification obtainable but is that degree of care, skill and diligence which are ordinarily possessed by the average of the members of the profession in good standing."

We do not look upon the question or upon this instruction as an attempt on the part of the witness or the court to group all of the practitioners of dentistry and then strike an average, for the plain purpose of the question and later of the instruction was an effort to ascertain and state the recognized established practice in the matter under inquiry. We find the objection raised in this point and those raised in points nine to fifteen, inclusive, on the court's rulings on evidence, unsubstantial.

The judgment below is affirmed.