SHIREY v. SCHLEMMER.

[No. 20,457. Filed April 5, 1967. Petition for rehearing denied April 25, 1967.]

*Joseph R. Roe,* of Columbia City, and *Kizer & Neu,* of Plymouth, both for appellants.

*George M. Bowser,* of Warsaw, and *George F. Stevens,* of Plymouth, both for appellee.

SMITH, J.—This action was brought by the appellant, John L. Shirey, against the appellee, George H. Schlemmer, to recover damages for alleged malpractice in connection with the treatment of a fracture of appellant's left arm. The treatment of the appellant by the appellee extended over a period from April 23, 1960 to October 28, 1960, at Murphy Medical Center in Warsaw, Indiana.

The issues were formed upon the filing of appellant's complaint. The complaint is as follows:

"Plaintiff complains of defendant and for cause of action says:

"1.   That at all times herein involved defendant was a physician and surgeon engaged in the practice of his profession at the city of Warsaw, Kosciusko County, Indiana.

"2.   That on the 23rd day of April, 1960, the plaintiff broke and fractured both bones of his left arm approximately two inches above the wrist and on said day employed said defendant as such physician and surgeon to attend plaintiff and said defendant did undertake to set said broken bones in their proper places and to attend on and treat plaintiff until he should be cured.

"3.   That defendant wholly failed to use due and proper care of skill in the treatment of plaintiff but conducted himself unskillfully and negligently in the following particulars, to-wit:

"(a)   Did improperly splint said bones and did not put the arm in a case to immobilize same.

"(b)   Did allow said plates to remain when x-ray pictures taken after the operation and subsequent thereto did indicate that said bones were angulated and crooked.

"(c) Did allow said plates to remain when plaintiff did complain to defendant his arm was swelling and not healing properly and that the bones were grating and causing him pain.

"(d) Did allow said plates to remain when x-ray pictures did reveal that the bones were not healing and forming the desired union.

"(e) Did allow said plates to remain after six months had passed and the bones appeared to be angulated and not knitting properly.

"(f) Did tell plaintiff in October, 1960 that the breaks had grown together and that he would soon recover the use of his arm, when in fact the bones had not grown together, and the arm was still bending and swelling at the breaks and causing plaintiff much pain.

"(g) Did not use due and proper care or skill in that, although the condition of plaintiff's arm did not improve, he failed to advise plaintiff of the possibility or probability of obtaining better results from treatment by a specialist, and he failed to call such specialist in consultation or refer plaintiff to such specialist.

"4. Plaintiff did rely on defendant to properly perform under said contract.

"5. That by reason of said unskillful and negligent conduct of the defendant, it was necessary for plaintiff to consult another doctor who in turn referred plaintiff to a specialist, an orthopedic surgeon, who found that the bones were not knitting properly and found it necessary to operate on plaintiff's arm on March 1, 1961 and to remove the plates placed thereon by the defendant, and to perform a dual type bone graft to the large bone, taking the bone for such graft from the left tibia bone in the left leg of the plaintiff, and to place the arm in a cast.

"6. That further by reason of said unskillful and negligent conduct of the defendant, it was necessary for said specialist, an orthopedic surgeon, to remove approximately 1½″ of the left small bone above the wrist and to excise same because that portion of bone had decayed.

"7. That further by reason of said unskillful and negligent conduct of the defendant, the plaintiff has lost the use of 1½″ of the left small bone above the wrist and does have a permanent partial impairment in the function of the left arm as a result of this condition of approximately 20%.

"8.   That further by reason of said unskillful and negligent conduct of the defendant, the plaintiff has been hospitalized sixteen days and has incurred hospital and medical bills in the total amount of $1,144.70.

"9.   That further by reason of said unskillful and negligent conduct of the defendant, plaintiff was unable to fully attend to his business of farming and trucking for a period of six months and has had to employ others to perform in his stead, costing the plaintiff the sum of $2,641.50 and that he has lost services in the amount of $10,000.00.

"10.   That further by reason of said unskillful and negligent conduct of the defendant, the plaintiff has been caused much pain and suffering.

WHEREFORE, plaintiff demands judgment against defendant for $75,000.00 and for all other and proper relief."

The defendant-appellee answered the above complaint and trial was had thereon. At the close of the evidence, the jury found for the defendant, and the court rendered judgment on the verdict. The appellant filed a motion for a new trial which motion was denied; and he now assigns such as error.

Appellant specifically claims that the negative judgment is not supported by the evidence presented at trial. He argues that the evidence clearly shows that the appellee, Dr. Schlemmer, did not follow medical procedures established for the area of northern Indiana in the treatment of appellant's fractured arm. Instead of using a full arm cast to completely immobilize the arm, the appellee only partially immobilized the arm by the use of a metal splint and bandage covering the wrist and forearm. The appellant introduced testimony by a medical expert to show that a normal fracture heals in ten (10) weeks, whereas the appellee allowed the appellant's arm to remain unattended and unhealed for six (6) months. The appellee told the appellant to squeeze a ball and carry a purse containing sand to stimulate the circulation and healing of the arm, and again the appellant alleges that such instruction were medically improper.

The remaining errors asserted by the appellant as grounds

for reversing the lower court's judgment pertain to appellee's instructions and the objections thereto, Nos. 3, 4, 5, 7, 9, 16, 18, 20, 21, 23, 24, 25, 26, 31 and 32.

It is the opinion of this Court that the trial court should not have tendered the appellee's instructions Nos. 3, 4, 5 and 7 to the jury. These instructions withdrew from the jury specification B, C, D, and F of paragraph 3 of the appellant's complaint which alleged in substance that the appellee failed to properly treat the arm in accordance with good medical practice in the area of northern Indiana. It is evident from an examination of the record that there was sufficient evidence to support all four of the allegations of negligence withdrawn from the jury by the court, and the giving of the appellee's instructions Nos. 3, 4, 5 and 7 was prejudicial to the appellant. *Norwalk Truck Line Co.* v. *Kostka* (1950), 120 Ind. App. 383, 88 N. E. 2d 799.

A physician or surgeon is required to possess and exercise that degree of skill and learning possessed by the other members of his profession in good standing in his community. A physician holding himself out as a specialist is held to a standard of special skill and knowledge. We are of the opinion that in either capacity the appellee in the case at bar was negligent in allowing the appellant's arm to deteriorate without taking affirmative steps to induce or speed up the healing process. Where the exercise of proper skill or care on the part of the physician is in issue, expert medical testimony ordinarily is essential, but expert evidence is not required where the treatment or the results thereof are of such character as to warrant an inference of want of care by a person of ordinary sense and judgment. *Physicians and Surgeons*, 23 I.L.E. § 20, p. 208.

There was testimony that after six (6) months of treatment the appellant's fractured arm had not begun to heal. The appellee was made aware of the lack of bony union by the x-rays he possessed, and yet at the end of six months he had

refused to change his procedure and continued to prescribe a "wait and see" or "sit tight" treatment. Even lacking knowledge of what should be done, an ordinary person could perceive that under these circumstances something should be done.

The appellant also maintains that the trial court erred in giving the appellee's remaining instructions to the jury, since such were not supported by the evidence. The giving of instructions on an issue under the above circumstances is reversible error only when the verdict of the jury may have been predicated upon such instructions thus resulting in prejudice to the other party. *Kahler* v. *Cain et al* (1943), 222 Ind. 330, 53 N. E. 2d 769. We cannot say that the jurors would have arrived at a different verdict if the appellee's instructions had not been given and therefore are reticent to hold that the error was prejudicial to the appellant's cause.

Having found that probative evidence of the appellee's negligence existed in the record, and that the trial court erred in withdrawing this issue of negligence from the jury, we must next examine the issue of the appellant's contributory negligence. We must decide whether there is evidence of contributory negligence, and if so, whether such contributed to the appellant's injuries.

The general rules with respect to the effect of contributory negligence on the right to recover for personal injuries apply in actions for injuries alleged to have been caused by the malpractice of a physician or surgeon. Where negligence on the part of the patient proximately contributes to the injury complained of, there can be no recovery. *Young* v. *Mason* (1893), 8 Ind. App. 264, 35 N. E. 521; *Lower* v. *Franks* (1888), 115 Ind. 334, 17 N. E. 630.

The following testimony is somewhat conclusive evidence that the appellant not only failed to follow Dr. Schlemmer's instructions, but he also attempted to use his fractured arm

in a negligent manner which most likely contributed to its failure to heal properly. The appellant gave the following answers to questions propounded to him by the appellee's attorney:

"Q. Never lifted anything heavy?
"A. No, I couldn't. It was impossible, even when I carried a fifty-pound bag of fertilizer I had to put this arm under the middle of the bag; I couldn't carry it with my arm.
"Q. Did you try to?
"A. Yes, but there wasn't enough grip there to do it.
"Q. Did you try to carry it with your left arm under the sack when you attempted to carry it?
"A. You couldn't carry a sack like that.
"Q. Did you try to?
"A. Well, I made various attempts to but just couldn't."

And from the cross-examination of Mr. John Shirey:

"Q. Up until that time had he told you not to use your arm?
"A. I think that was the instruction, yes."

There is also a rather lengthy lapse of time between the discharge of the appellee and the treatment by the appellant's second surgeon, Dr. Stauffer. The appellant discharged the appellee on October 28, 1960, but did not seek treatment from another doctor until January of 1961. This interval of time in which the appellant received no treatment for his fractured arm certainly did not improve the arm's chances of healing properly.

The appellant has urged that the verdict is not sustained by sufficient evidence and is contrary to law. We do not weigh the evidence and substitute our judgment for that of the jury or trial court. If there is evidence to support the verdict of the jury, we do not reverse on an assignment of the appellant that the verdict of the jury is contrary to law unless it is shown that reasonable men could not have arrived at the same verdict or judgment. *Gaut*

*et al* v. *Gaut, Administratrix, Etc.* (1963), 134 Ind. App. 317, 187 N. E. 2d 580.

We do not know what evidence the jury considered in reaching their verdict, nor can we penetrate the trial court's process to discover the basis of their judgment, but we can and do decide that considering the evidence most favorable to the appellee, the trial court's judgment must be affirmed. The error, if any, cannot overcome the negligence of the appellant, nor can the possible prejudice cast upon the jury overcome the correct result it reached. The cause was fairly tried on its merits and a right result reached. *Sheets* v. *Garringer* (1963), 135 Ind. App. 488, 194 N. E. 2d 757.

We are of the opinion that the trial court did not err in overruling appellant's motion for a new trial.

Judgment affirmed.

Pfaff, P. J., and Cook, J., concur.

Bierly, J., dissents without opinion.

## DISSENT ON PETITION FOR REHEARING.

BIERLY, J.—I would grant the petition for rehearing in the above entitled case.

The appellant contends that the giving of the appellee's Instructions Nos. 3, 4, 5 and 7 was prejudicial to the appellant. I quote the opinion relative to the giving of these instructions:

"It is the opinion of this Court that the trial court should not have tendered the appellee's instructions Nos. 3, 4, 5 and 7 to the jury. These instructions withdrew from the jury specifications B, C, D, and F of paragraph 3 of the appellant's complaint which alleged in substance that the appellee *failed to properly treat the arm in accordance with good medical practice in the area of Northern Indiana.* It is evident from an examination of the record that there was sufficient evidence to support all four of the allegations of negligence withdrawn from the jury by the court, and

the giving of the appellee's instructions Nos. 3, 4, 5 and 7 was prejudicial to the appellant. *Norwalk Truck Line Co. v. Kostka* (1950) 120 Ind. App. 383, 88 N. E. 2d 799." (Emphasis supplied.)

I am of the opinion that the giving of aforesaid instructions constituted reversible error and said judgment should have been reversed.

The opinion seems to justify the affirmance of the judgment due to alleged contributory negligence on the part of appellant. This affirmance apparently was based on the assumption that appellant was guilty of contributary negligence. Contributory negligence has been defined as:

". . . the failure of a plaintiff to use reasonable care to avoid injury to himself which failure if any proximately contributes to *cause* the injuries for which he seeks to recover." (Emphasis supplied.) Indiana Trial and Appellate Practice, *Flanagan, Wiltrout & Hamilton*, § 1526, p. 252; *Holtam* v. *Sachs* (1963) 136 Ind. App. 231, 193 N. E. 2d 370.

Appellee treated the appellant from the time of the fracture of both bones of his left arm on April 23, 1960, to October 28, 1960, when appellant discharged appellee as attending physician. Whatever contributory negligence, if any, attributed to appellant, must have occurred during this period of time.

The opinion finds the appellant guilty of contributory negligence on two counts. The first related to appellant carrying, or attempting to carry, fertilizer bags. The second was the failure of the appellant to consult the second doctor or physician until the — day of January, 1961.

The evidence shows that the physician failed to treat appellant's injury in such professional manner as was the practice in the community. The alleged act or acts of the appellant does not excuse the performance of medical skill by the attending physician in a manner comparable to commonly accepted medical standards in such type of injury.

It appears that the only manner in which the lifting of a bag of fertilizer could be contributory negligence on the part of appellant, would be a showing that this act was a direct, proximate cause of injury. This contention seems remote, since the time of the attempt to lift the bag was not established, and hence it might have been four or five months following the date of injury.

The negligence of the doctor was not in the nature of an act, but rather it was a failure to act, or an omission. Even if we were to assume that the plaintiff re-injured his arm by lifting the fertilizer bag, this would not be a proximate cause of the injury as it is related to the defendant's failure to act. The evidence discloses that the attending physician, after the initial treatment, allowed the patient's arm to remain unattended for six (6) months, during which time the arm failed to heal. I cannot agree that plaintiff's attempt to lift a fertilizer bag would contribute to the proximate cause of a negligent failure to act.

By no stretch of the imagination can we perceive how the failure to consult a second physician until January, 1961, can be construed to make the appellant guilty of contributory negligence for an injury occurring six months previously.

It is stated in 50 A. L. R. 2d 1044, at p. 1045, that:

"Recovery has been denied where the patient's negligence concurred with that of the physician or surgeon in causing the injury, while negligence on the part of the patient subsequent to the acts of malpractice, with resultant aggravation of the injury which had been caused by such malpractice, serves to mitigate the damages, the defendant being liable for such injuries as are directly attributable to his acts, but not for the additional injuries caused by such subsequent negligence of the patient."

Also, in a New Jersey malpractice case (*Flynn* v. *Stearns* [1958], 145 A. 2d 33, at p. 37), involving a broken arm, the court went into great detail examining the question of con-

tributory negligence as it applies to medical malpractice cases, and reached the following conclusions:

"Appellant contends that this charge was erroneous because 'Negligence of the patient, to constitute a bar to the suit, must have been an active and efficient contributing cause of the injury; it must have been simultaneous and cooperating with the fault of the defendant, must have entered into the creation of the cause of action, and have been an element in the transaction which constituted it. Where the fault of the patient was subsequent to the fault of the physician and merely aggravated the injury inflicted by the physician, it only affects the amount of the damages recoverable by the patient.' This is a correct general statement of the law. 41 Am. Jur., Physicians & Surgeons, sec. 80, p. 199; Annotations: 50 A. L. R. 2d 1043 and 17 L. R. A., N. S., 1242. Appellant says that since here the fault, if any, of the plaintiff was subsequent to the fault of the defendant it was not a proximate contributing cause of the injury, and it should have been submitted to the jury, if at all, only as bearing on the issue of damages, and not as a basis for a finding of contributory negligence.

"Although it is frequently said that the 'general rules with respect to the effect of contributory negligence on the right to recover for personal injuries apply in actions for injuries alleged to have arisen from the negligence or malpractice of a physician.' (70 C. J. S., Physicians and Surgeons, § 51, 973), it is much more difficult to apply those rules in such cases than in the usual accident case. The reasons for this are obvious, chief among them being that in an accident case we deal ordinarily with what happened in the space of a few minutes and negligence and contributory negligence are determined on the basis of the actions within that brief time. As compared with the medical malpractice case, it is relatively easy in the usual accident case to ascertain and to set apart what happened before the accident, at the moment of the accident, and thereafter, and to distinguish between the accident and the results thereof. The contact between a physician and his patient, on the other hand, covers a much longer period of time and involves numerous and diverse actions, treatments, medications, instructions, and day-to-day fluctuations in the condition of the patient and the corresponding duties of the physician. Frequently the question of how long the relationship of doctor and patient continued becomes very important. The ministrations of the physician are usually a continuing process and,

when it is, the evaluation of his negligence may have to be made on the basis of his overall performance during the period of that relationship rather than on what happened at any particular instant within that period. By the same token, whether what the patient did or failed to do in response to his doctor's instructions constituted contributory negligence must frequently be determined not on the basis of any particular incident, but on the basis of all that happened during the period of that relationship. Therefore, the general rules relating to contributory negligence must be sharpened considerably when applied to medical malpractice cases and care must be taken to tailor the charge to the jury in such cases to fit the facts of the particular case. Cf. *Kreis* v. *Owens,* 38 N. J. Super. 148, 155, 118 A. 2d 420 (App. Div. 1955) ; *Brumberger* v. *Burke,* 56 F. 2d 54, 56 (3 Cir., 1932)." . . .

"In its charge on contributory negligence, the trial court did not tell the jury that such negligence must be a proximate cause of the injury. The failure to do so with an adequate definition of proximate cause is prejudicial error. *Naccia* v. *Tynes,* 39 N. J. Super. 1, 6, 120 A. 2d 263 (App. Div. 1956) ; *Kreis* v. *Owens,* supra. Cf. *Snyder* v. *Bicking,* 115 N. J. L. 549, 550, 551, 181 A. 161, 102 A. L. R. 409 (E. & A. 1935). Instead, the trial court told the jury that the evidence (and it was the only evidence) presented by defendant to support the defense of contributory negligence was plaintiff's failure to continue the exercises at home after September 25, 1950, and that upon that evidence the jury could find for the defendant. In effect, the trial court thus ruled that as a matter of law, if the jury found that the elements of contributory negligence (other than proximate cause) existed in this case, the failure to continue the exercises met the legal standard of a proximate contributing cause of the injury.

"Under the evidence in this case this was error. If the defendant was negligent in the respects charged by the plaintiff, plaintiff's failure to exercise 'was subsequent to the fault of the physician and merely aggravated the injury inflicted by the physician' and therefore it affected only 'the amount of the damages recoverable by the patient.' 41 Am. Jur., Physicians & Surgeons, sec. 80, p. 199." . . .

"Although the jury had sufficient evidence upon which to find that the defendant was not guilty of negligence, we have no way to determine whether the jury found for the defendant upon that ground or upon the ground of con-

tributory negligence. Hence, the judgment must be reversed and a new trial ordered."

I am of the opinion that the factors which the majority classify as "contributory negligence" are really factors which would go towards a mitigation of damages only, and in no way could or should affect liability.

In addition, the appellant asserts error in this court's opinion and decision, in that we have failed to give a statement in writing and failed to give a decision on the following question arising from the record and by appellant in his brief to wit:

That defendant's (appellee's) tendered instruction No. 16 which was a misstatement of the law.

Instruction No. 16 reads as follows:

"It is the duty of a patient, as stated in the instructions herein, to submit to the treatment prescribed by his physician and to follow the necessary or reasonable directions given by him. If the patient, by refusing to adopt the procedures given by the doctor or to comply with the directions of the doctor, prostrates or defeats the endeavors of the physician and surgeon, or if he aggravates the case by his misconduct, he cannot charge to the physician the consequences due distinctly to himself.

"*A party seeking to recover for an injury must not have contributed to it in any degree, either by his negligence or the disregard of a duty imposed upon him by the physician.* If the contributory negligence of the patient, if you find he was contributory negligent under the instructions I have given, united with other factors in this case in producing the injuries complained of, Dr. Schlemmer is not liable for damages, therefore, and in such case, your verdict should be for the defendant." (Emphasis supplied).

The appellant objected to this instruction, as follows:

"The plaintiff objects to defendant's tendered instruction number sixteen (16) for the reason that there is no evidence to support the instruction that the plaintiff did not follow the necessary or reasonable directions given to him, and where there is no evidence, the jury should not be

instructed on that subject. The instruction is also erroneous for the reason that it would state to the jury that if the plaintiff failed to follow any instruction, whether it was correct or whether it was reasonable, it would prevent his recovery. *The instruction is also a misstatement of the law in that it states that the plaintiff cannot recover either by his negligence or the disregard of the duty imposed upon him by his physician. The only thing that can prevent plaintiff's recovery on his own conduct is negligence. Under this instruction, the disregard of a duty imposed upon him by a physician defeats his right of recovery even though it is not negligence, and if it is not negligence, it cannot be contributory negligence, and so this instruction improperly states the defense of contributory negligence.*" (Emphasis supplied).

The error of Instruction No. 16 is obvious. The appellant's objections thereto state my conclusion correctly. If this were not the law, a doctor could negligently leave an instrument inside a patient's body following a surgery, then prescribe that the patient take a certain number of pills daily to prevent infection and fever. Assuming patient failed to take the pills or missed taking some of them, he could not recover for the doctor's negligence, because he would have disregarded a duty imposed upon him by the doctor, in failing to follow the doctor's instructions to take the pills. This is clearly a misstatement of the defense of contributory negligence.

Also, the appellant points out in his petition for rehearing that, ". . . the Court erred in its opinion and decision . . .

\* \* \*

"In holding that the jury could have found the appellant guilty of contributory negligence when said jury was erroneously instructed in this regard by the giving of appelle'*stt* tendered instruction number 31, . . . ."

Said instruction is as follows:

"Where both the surgeon and patient are free from negligence, or where the surgeon and patient are both guilty of negligence, or where the surgeon is free from fault and the patient is guilty of negligence, no recovery can be had by

the patient against the surgeon in any case. *It is only where the surgeon is guilty of negligence and the patient is without negligence on his part contributing in any degree to such injuries that the patient can recover damages of the surgeon.*" (Emphasis supplied.)

Plaintiff's objections to said instruction is as follows:

"Plaintiff objects to defendant's tendered instruction number thirty-one (31) for the reason that the last sentence in the instruction is an incorrect statement of the law. This instruction is telling the jury that even though the defendant, the surgeon, is guilty of negligence, the plaintiff cannot recover unless he is without negligence on his part contributing *in any degree* to such injury. This is not the law. *In order that there be contributory negligence, the negligence of the plaintiff must concur with that of the defendant in producing the original injury. Under this instruction, if the negligent conduct of the defendant produced the injury but at some subsequent time the plaintiff was negligent and his negligence aggravated his injury, this is not contributory negligence that would prevent a recovery, but is only negligence that could be used on the question of mitigation of damages. This instruction is, therefore, erroneous in that it tells the Jury that even after Dr. Schlemmer was guilty of negligence by failure to put on an arm cast and that a nonunion resulted and the plaintiff failed to follow the doctor's instructions, even though erroneous, such action on the part of the plaintiff contributed in any degree to his injury, he could not recover. Certainly this cannot be the law.*" (Emphasis supplied.)

I am of the opinion that the giving of this instruction constituted reversible error in itself.

The Supreme Court has recently spoken in regard to contributory negligence in the case of *Huey* v. *Milligan* (1961), 242 Ind. 93, 96, 175 N. E. 2d 698.

In that case, an instruction was given over the objection that it was,

" 'a mandatory instruction which orders the jury to return a verdict for the defendant if the plaintiff was guilty of any negligence which 'proximately contributed in the *slightest degree* to the collision.' ' " (Emphasis theirs.)

"Appellant asserts that a negligent act of the plaintiff must be a substantial factor in, or materially contribute to, producing the injury of which complaint is made in order to constitute a proximate cause thereof."

The court then proceeded to distinguish between a proximate cause and a remote cause. It held that by its definition, contributory negligence,

". . . excludes the idea of a 'remote', 'indirect' or 'insignificant' causal connection between the negligence and the injury . . . .

"Consequently the negligence of appellee herein could not be both a remote and a proximate contributing cause of the injury. A negligent act which contributes 'in the slightest' to an injury is a remote cause and not a proximate or direct cause." *Huey* v. *Milligan, supra.*

In the case at bar, the words, "in any degree," would certainly encompass the words, "in the slightest," therefore, the instruction is erroneous.

It should also be remembered that we have no degrees of negligence in Indiana. One is either negligent or one is not, and then the causation factor is applied to determine liability, or in the case of contributory negligence, the negligence must have proximately contributed to the injury to be a valid defense.

For these reasons, I am of the opinion that the petition for rehearing should be granted.

NOTE.—Reported in 223 N. E. 2d 759. Dissent to Petition for Rehearing reported in 225 N. E. 2d 584.