CIESIOLKA v. SELBY ET AL.

[No. 769A136. Filed August 18, 1970. Rehearing denied September 14, 1970. Transfer denied February 1, 1971.]

*Joseph D. Anderson, Patrick, Anderson, McDonald and Perry,* of South Bend, for appellants.

*Roland Obenchain,* of South Bend, for appellees.

COOPER, J.—This matter comes to us from the St. Joseph Circuit Court wherein the plaintiffs-appellants each filed a

complaint against Keith E. Selby, M.D., for damages for his alleged negligence in his professional treatment of the plaintiff, Hattie Ciesiolka.

The plaintiff, William Ciesiolka, prayed for damages for loss of services of his wife and medical expenses. The plaintiff, Hattie Ciesiolka, prayed for damages for certain injuries, pain and suffering. The defendant, Keith Selby, filed answers in compliance with Supreme Court Rule 1-3 to William Ciesiolka's complaint and to pleading paragraph I of Hattie Ciesiolka's complaint. An affirmative answer was directed to pleading paragraph II of her complaint. While this cause was pending, and before trial, Keith Selby died, and the executors of his estate, the present appellees, were substituted as parties defendant.

Thereafter, the two causes of action were consolidated, and the matter being at issue, was submitted to a jury for trial. At the close of the plaintiffs' evidence, the defendants moved for a directed verdict, which motion was granted, and the jury was instructed to return a verdict for the defendants. The verdict was so returned and judgment was entered accordingly.

The appellants' motion for a new trial alleged as cause therefor, in substance, the following:

1. The directed verdict of the jury is contrary to law.

2. The directed verdict of the jury is not sustained by the evidence.

3. Error of law occurring at the trial in several particulars in the application of the "Dead Man's Statute," Burns' Indiana Statutes, § 2-1715.

4. The court erred in granting the defendants' motion made at the close of the plaintiffs' evidence to instruct the jury to return a verdict for the defendants.

The assigned error on appeal is that the trial court erred in overruling the motion for a new trial.

In view of our decision, we need only discuss the fourth cause, that the trial court erred in directing the verdict for the defendants.

The record reveals that Hattie Ciesiolka was a patient of Dr. Keith E. Selby and was being treated by him for an abdominal hernia. In September of 1959, Dr. Selby operated on her and placed a 6-inch by 8-inch piece of teflon mesh in her abdomen for support in treating her abdominal hernia. Following this surgery, the incision did not heal and she experienced continuing pain and drainage from the incisional area. Dr. Selby continued treatment and in June of 1961, he operated a second time and removed a part of the teflon mesh from her abdomen. After the second operation, the infection, abscess, pain, and drainage persisted. Dr. Selby continued to treat her for this condition for a period of almost two years, until March of 1963, when in his absence from the city, she consulted another surgeon, Dr. James Wilson, concerning her abdominal complications. Dr. Wilson immediately ordered her hospitalized, operated on her within a few days thereafter, reopened the incision, and removed the remainder of the mesh in her abdomen. After Dr. Wilson's operation, she improved and her abdomen completely healed.

At the trial of this cause, the plaintiffs' witness Dr. Wilson testified that he had examined the medical records prepared by Dr. Selby in connection with his operation on the plaintiff in 1961. Those records revealed that in the pre-operative report Dr. Selby indicated the purpose of the surgery to be performed on the plaintiff was to remove the teflon screen and repair the hernia. Immediately after the operation Dr. Selby made a post-operative report that the old mesh was removed.

The appellants therefore argue that this was not a case in which expert medical testimony was required to prove their allegations of Dr. Selby's negligence, because the case

does not involve the question of Dr. Selby's lack of skill or any lack of care in making his medical judgment, but rather, his negligence in not performing the operation in accord with his medical judgment as expressed in both his pre- and post-operative reports. The appellants further contend that they presented sufficient evidence at the trial to sustain the allegations of their complaints and that the question of Dr. Selby's alleged negligence was therefore a matter for the jury to have decided.

The appellees, on the other hand, contend that the plaintiffs could not prove negligence on the part of Dr. Selby except by expert testimony. No expert testimony having been presented on this issue, the appellees assert that the directed verdict in their favor was proper.

While the appellees urge that the decision of Dr. Selby to remove only part of the mesh during the operation instead of all of it, as he had indicated on the pre-operative report was his intention, was a matter of medical judgment which he exercised during the course of the operation, they fail to explain why, if he did change his mind during the operation, his post-operative report indicated "removal of screen." One of the logical inferences to be drawn from Dr. Selby's post-operative report is that he thought he had removed all of the mesh.

Appellants allege that there was sufficient evidence of probative value adduced at the trial of this cause that the jury could have directly found, or reasonably inferred from the evidence that Dr. Selby was negligent in failing to remove all the teflon mesh as he had indicated he was going to do, and as he indicated he had done, and therefore, having introduced such evidence, it was error for the court to have instructed the jury to return its verdict for the defendants. With this contention we must agree.

The general rule concerning the propriety of sustaining a motion for a directed verdict in favor of the defendant

is set out in the case of *Whitaker, Admr.*, v. *Born-trager* (1954) 233 Ind. 678, 680, 681, 122 N. E. 2d 734, as follows:

"When there is a total absence of evidence or legitimate inference in favor of the plaintiff upon an essential issue; or where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant. *Jackson Hill Coal and Coke Co.* v. *Bales et al.* (1915), 183 Ind. 276, 279, 108 N. E. 692. *Slinkard* v. *Babb* (1953), 125 Ind. App. 76, and cases there cited. 112 N. E. 2d 876, 878; *Gregory* v. *The C.C.C. and I.R.R. Co.*, 112 Ind. 385, 388, 14 N. E. 2d 228.

"When there is some evidence or legitimate inference supporting each material allegation of the complaint, the court will not weigh the conflicting evidence or inferences but will consider only the evidence and inferences that are most favorable to the party against whom the motion for a peremptory verdict is directed. *Jackson Hill Coal and Coke Co.* v. *Bales et al.* (1915), 183 Ind. 276, 280, *supra;* *American Food Co.* v. *Halstead* (1905), 165 Ind. 633, 638, 76 N. E. 251. See also *Heath* v. *Sheetz* (1905), 164 Ind. 665, 667, 74 N. E. 505. *Slinkard* v. *Babb* (1953), 125 Ind. App. 76, and cases there cited; 112 N. E. 2d 876, 878, *supra.*

"In determining whether a peremptory instruction should be given the court must accept as true all facts which the evidence tends to prove and draw, against the party requesting such instruction, all inferences which the jury might reasonably draw. *Orey* v. *Mutual Life Insurance Company of New York* (1939), 215 Ind. 305, 306, 19 N. E. 2d 547; *Holtz* v. *Elgin, etc., Ry. Co.* (1951), 121 Ind. App. 175, 98 N. E. 2d 245; *Chacker* v. *Marcus* (1949), 119 Ind. App. 672, 674, 86 N. E. 2d 708, 89 N. E. 2d 455; *Balzer* v. *Waring* (1911), 176 Ind. 585, 594, 95 N. E. 257, 48 L.R.A., N.S. 834."

Further, in 28 West's Indiana Law Encyclopedia, Trial, § 136, pages 131 and 132, we find the following statement concerning when a trial court may properly direct a verdict for the defendant:

" 'The court may properly direct a verdict for defendant where the evidence introduced by plaintiff wholly fails to·

establish any cause of action in his favor under the issues, where the testimony affords no basis for a recovery in favor of the plaintiff, or where the evidence most favorable to the plaintiff, together with all reasonable inferences which a jury might draw therefrom, is insufficient to establish one or more of the facts essential to plaintiff's right of action, or insufficient to sustain a verdict in his favor.' (Citations omitted.)"

In the same volume at Trial, § 137, pages 133, 134 and 135, we find the following statement concerning when it is improper for a trial court to direct a verdict for the defendant:

" 'A court should not give a peremptory instruction for the defendant unless there is a total absence of evidence or reasonable inference on at least one essential element of the plaintiff's case, or unless there is no conflict in the evidence and it is susceptible of but one inference which precludes recovery. It is only when the plaintiff fails to make a case, so that it would be the duty of the trial court, or of a higher court on appeal, to set aside the verdict as not being supported by any competent evidence on some material point, that a verdict for the defendant should be directed.

'Where there is some or any evidence which with all its reasonable inference and intendment fairly tends to prove the plaintiff's case, a peremptory instruction in favor of the defendant should not be given. The court cannot give a peremptory instruction for the defendant where there is some competent evidence to sustain a verdict for the plaintiff.

'It is improper for the court to instruct the jury to return a verdict for the defendant when the facts established by the evidence are such that to warrant such conclusion by the court, the court would have to weigh the evidence or judge as to the credibility of the witnesses.' (Citations omitted.)"

Applying these principles to the evidence in the case now before us, we are of the opinion that there was competent evidence of probative value presented by the plaintiffs, which with all its reasonable inferences and intendments, fairly tended to prove the plaintiffs' causes of action. There was

evidence in the record from which the jury could have determined that it was Dr. Selby's judgment prior to the operation on the plaintiff that all of the mesh should be removed, and after the operation, that all the mesh had been removed. If such was his judgment, then the jury could have reasonably inferred negligence from the fact that once having made such judgment, Dr. Selby failed to perform the operation in accordance with that judgment as it was expressed in both his pre-operative and post-operative reports.

On direct examination, the plaintiffs' witness, Dr. James Wilson, testified as follows:

"Q   Did Dr. Selby himself in the hospital records declare the purpose of the surgery in a pre-operative diagnosis?

A   Pre-operative diagnosis would be found down in here. (Indicating)

Q   Is that the first page of the record, Doctor?

A   Well, this is the front page of the hospital record and the final diagnosis is listed here, and the complications and the operation.

Q   All right. Does the portion designated 'operation' aid us in determining the purpose of the surgery?

A   Removal of screen and repair of hernia."

(Tr. p. 219, lines 22-30; Tr. p. 220, lines 1-5)

"Q   And then referring to the record of surgery that was performed in 1961 by Dr. Selby, what did you as a physician and surgeon, after examining that record prior to the surgery you performed, determine was the status of the teflon screen that had been placed in Mrs. Ciesiolka in 1959?

A   As a result of reading this record?

Q   Yes.

A   Well, this statement in regard to the screen in this record, as follows, 'and the old mesh removed.'

Q  What did you take that to mean when you examined that record and before you performed surgery on Mrs. Ciesiolka? .

A  Well, I take it to be exactly what is stated there, that the teflon mesh that had previously been put in there had been removed."

(Tr. p. 235, lines 17-30; Tr. p. 236, lines 1-3)

Further, on page 256, lines 23-30, and pages 257, lines 1-17 of the transcript, Dr. Wilson testified as follows:

"A  Now, the post-operative diagnosis is written down here 'same.' Now, the post-operative diagnosis means the diagnosis as determined after the operation has been completed.

Q  Yes.

A  It is written down as being the word 'same,' which indicates that the operation—that Dr. Selby anticipated the findings were the same, before and after.

Q  All right. Would you proceed then? ·

A  All right. It is written in, 'surgeon Dr. Selby, anesthetist Dr. Walker, assistance Dr. Olson, instrument nurse M. J. Anthony, R. N., sponge nurse D. Boryc, R.N.' Now, these are all in hand writing and normally they are written there prior to the time the operation starts. Now, the anesthetic was written in 'pentothal, nitrous oxide, oxygen and anectine.' The next line is condition during anesthesia, pulse, respiration, stimulants and so forth. Five per cent glucose in distilled water, anectine, saline 250 cc's and blood. Next is operation. *It states revision of incisional hernia and removal of screen."* (Our emphasis)

Thus, the record clearly reveals that Dr. Wilson, having read Dr. Selby's records pertaining to the 1961 operation on the plaintiff, gave his expert opinion that Dr. Selby had indicated in the pre-operative report he intended to remove all

the mesh, and in the post-operative report that he had removed all the mesh.

We therefore are of the opinion that there is evidence in the record to support the allegations of negligence in the appellants' complaints and the trial court erred in directing the verdict for the defendants.

Judgment reversed, and this cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

Lowdermilk, C.J., Carson, and Sullivan, JJ., concur.

NOTE.—Reported in 261 N. E. 2d 95.