**R.S. WRIGHT, M.D., Donald D. Donner, M.D., and Bedford Medical Center, Appellants–Defendants,**

**v.**

**Betty CARTER and John Carter, Appellees–Plaintiffs.**

**No. 51A01–9207–CV–236.**

Court of Appeals of Indiana, First District.

Dec. 22, 1992.

Rehearing Denied Feb. 16, 1993.

Edna M. Koch, Tipton, Cohen & Koch, Indianapolis, David J. Mallon, Jr., Kelly J. Pitcher, Ice Miller Donadio & Ryan, Indianapolis, for appellants-defendants.

Barry S. Brown, Bloomington, for appellees-plaintiffs.

ROBERTSON, Judge.

This is an interlocutory appeal from the denial of the appellants, Dr. R.S. Wright, the Bedford Medical Center, and Dr. Donald D. Donner's motions for summary judgment. The issue presented for review is whether the Plaintiffs, Betty and John Carter, were required to come forward with expert medical testimony in opposition to the Medical Review Panel's unanimous opinion that the doctors and hospital did not violate the standard of care required of them when Dr. Wright performed a biopsy under needle control on Betty Carter.[1] In denying the motion for summary judgment, the trial court necessarily determined that expert medical testimony was not critical to meet the allegations of the Carters' complaint. With this determination, we agree.

In August, 1986, Dr. Donner, a radiologist, localized a non-palpable breast mass in Betty Carter's left breast by using a Kopan's needle and xerogram radiographic studies. The procedure was used to facilitate the identification and stabilization of the target mass for biopsy. Later, Dr. Wright surgically excised the mass. During the surgical procedure by Dr. Wright, the mammographic wire or "needle" portion of the Kopan's device was transected and a 1.1 centimeter piece of the opaque marking needle was left in Betty Carter's breast. Dr. Donner was not present during the surgery. However, post-operatively, Dr. Donner did examine the mass by xerogram but did not detect from his examination of the mass that the wire had been transected. In May, 1987, Dr. Donner performed a xeromammography of Betty Carter's left breast which revealed the presence of the wire. The wire was subsequently surgically excised by another surgeon at a different hospital.

The Carters allege that when Dr. Wright performed the biopsy, he failed to remove or order removed the portion of the mammographic wire retained in Betty Carter's breast and that he failed to diagnose and advise Betty Carter of the existence of the wire within a reasonable period of time. As to Dr. Donner, the Carters allege that Dr. Donner, too, failed to remove the wire or order it removed. The Carters make no complaint about the manner in which Dr. Donner localized the mass or inserted the needle. Carters' complaint against the Bedford Medical Center is simply that its employees, Drs. Wright and Donner, were negligent in their care of Betty Carter.

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove the nonexistence of a genuine issue of material fact; if there is any doubt, the motion should be resolved in favor of the party opposing the motion. Once the movant has

---

1. We direct the Carters to Ind.Appellate Rule 8.2(A)(1) which provides that the lines of a brief reproduced from typewritten copy be double spaced, except in the case of quoted material. We are confident the double spacing requirement applies with equal force to briefs reproduced from computer-generated or word-processed copy.

sustained this burden, however, the opponent may not rest upon the mere allegations or denials in his pleadings, but must respond by setting forth specific facts showing that there is a genuine issue for trial. T.R. 56(E).

On appeal from a summary judgment, the appellate court faces the same issues, which we analyze in the same way as the trial court. *Dept. of Revenue v. Caylor–Nickel Clinic* (1992), Ind., 587 N.E.2d 1311, 1313. On appeal, however, the party which lost in the trial court has the burden to persuade the appellate tribunal that the trial court's decision was erroneous. *Id.* ...

In a medical malpractice action based upon negligence the plaintiff must establish, "(1) a duty on the part of the defendant in relation to the plaintiff; (2) failure on the part of defendant to conform its conduct to the requisite standard of care required by the relations; and (3) an injury to the plaintiff resulting from that failure." *Burke v. Capello* (1988), Ind., 520 N.E.2d 439, 441 (quoting *Miller v. Griesel* (1974), 261 Ind. 604, 611, 308 N.E.2d 701, 706).

*Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190. A negligence case is rarely an appropriate case for disposition by summary judgment, especially when the critical question for resolution is whether the defendant exercised the degree of care due under the factual circumstances. *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18, 20. Whether a defendant exercised due care, like causation, is generally a question for the trier of fact, and not answerable as a matter of law. *Id.*

The legal basis for the doctors' motions for summary judgment is that there is an absence of a genuine issue of material fact as to the failure of the doctors to exercise due care in the treatment of Betty Carter,

the Carters having failed to offer any expert evidence in opposition to the unanimous opinion of the medical review panel that the doctors were not negligent. As a general rule, Indiana's substantive law requires expert opinion as to the existence and scope of the standard of care which is imposed upon medical specialists and as to whether particular acts or omissions measure up to that standard of care. *Bassett*, 368 N.E.2d at 23. Because of the technical and complicated nature of some types of medical treatment, the trier of fact is simply unable to rationally apply the standard of care without the benefit of informative expert opinion on the ultimate question of breach of duty. *Burke v. Capello* (1988), Ind., 520 N.E.2d 439, 441.[2]

■ But, the Carters maintain, their allegations, which concern the failure of Betty Carter's physicians to retrieve and remove a part of a foreign object from her breast which they employed as a means of identifying a fibrous mass and which no longer serves any medical purpose, place this case in the class of cases which do not require expert medical testimony for a jury to determine whether the physicians met the standard of care required of them. Expert medical testimony is not required where the results of a treatment are of such a character as to warrant an inference of want of care by a person of ordinary sense and judgment. *Shirey v. Schlemmer* (1967), 140 Ind.App. 606, 610, 223 N.E.2d 759 (withdrawal of instructions error but not prejudicial), *superseded*, 249 Ind. 1, 230 N.E.2d 534 (error prejudicial). *Accord Stumph v. Foster* (1988), Ind.App., 524 N.E.2d 812.

■ The continued presence of a foreign object is a matter which is both understandable and within the common knowledge of laypersons. Accordingly, the Carters maintain that the affidavit and testi-

---

**2.** The new standard of care required of physicians, that a physician exercise that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which he belongs, acting under the same or similar circumstances, still requires expert testimony about what other reasonable doctors similarly situated would have done under the circumstances. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 191.

mony of Betty Carter is sufficient, in and of itself, to refute the medical review panel's determination that none of the defendants breached the standard of care required of them. The Carters cite several analogous cases in which the courts have found, despite expert medical opinion that no breach of duty occurred, that a question of fact existed to be resolved by a jury where substances of various types have been utilized during surgery and then not removed. *See e.g. Burke*, 520 N.E.2d 439; *Klinger v. Caylor* (1971), 148 Ind.App. 508, 267 N.E.2d 848; *Ciesiolka v. Selby* (1970), 147 Ind.App. 396, 261 N.E.2d 95; *Funk v. Bonham* (1932), 204 Ind. 170, 183 N.E. 312.

In meeting the allegations of their complaint, the Carters will not be required to show that Betty Carter's physicians did not utilize the proper procedure, did not do what was proper in the performance of the biopsy itself or did anything improper in carrying out the Kopan's needle procedure. Rather, the Carters will be asking a jury to conclude that due care required that the physicians be responsible for removing the foreign substances they introduce while performing these specific procedures which will not serve some medical purpose when the treatment has been completed.

■ Perhaps, as Dr. Wright argues, medical expertise may be needed for jurors to understand how a mass is removed by use of a Kopan's needle, how delicate the Kopan's needle is and how easily it may be severed by even the best of surgeons. But given the ease in which a Kopan's needle may be transected, due care may require that even the most competent of surgeons adopt some additional precaution to ensure that all of the needle is removed. This is not a question which requires medical expertise but one that can be best and ably performed by laypersons. Even lacking knowledge of what should be done, an ordinary person could perceive that under these circumstances, something should be done. *Shirey*, 140 Ind.App. at 611, 223 N.E.2d 759. As the Indiana Supreme Court pointed out early on, to decide other-

wise would be to permit the medical community to determine by custom within the profession whether the standard of care had been violated, a function which Indiana law has assigned to the jury. *See Funk*, 204 Ind. at 176, 183 N.E. at 315.

■ Dr. Donner argues that once he localized the mass with the Kopan's needle, he no longer had any control over the needle and it was Betty Carter's surgeon who was responsible for removing it. We note however that it was Dr. Donner's skill and expertise which was called upon to insert the mammographic wire and Dr. Donner who eventually confirmed the continued presence of the "high density metallic structure" by xeromammography. If, as the doctors' submissions to the medical review panel indicate, the fine, opaque, hairlike wire is non-palpable and does not pursue a straight course through the breast, the only means of ensuring that the needle is completely removed may be a post-operative xeromammogram. Under the facts of this case, responsibility for tracking the entire mammographic wire and ensuring its removal, like responsibility for determining that the entire fibrous mass has been removed, may belong to the radiologist as much as the surgeon. The issue is not whether Dr. Donner, alone, had exclusive control but whether under the circumstances due care required that he exercise some control to ensure that the device he inserted was properly removed. *Cf. Carpenter v. Campbell* (1971), 149 Ind.App. 189, 271 N.E.2d 163 (Ample evidence to permit question of negligence of primary physician who failed to require presence of trained personnel while drug administered during early hours of day of surgery); *Klinger v. Caylor* (1971), 148 Ind.App. 508, 267 N.E.2d 848 (affidavit of patient sufficient to create genuine issue of material fact where patient alleged padding and operating procedures in exclusive management and control of multiple physicians, the specific operating procedures and relationships not known by patient).

In sum, we agree with the trial court that the allegations of the Carters' com-

plaint along with Betty Carter's affidavit are sufficient to establish a genuine issue of material fact on the question of whether the doctors breached the standard of care. The judgment should be affirmed.

Judgment affirmed.

RATLIFF, Senior Judge, and RUCKER, J., concur.