John R. MALOOLEY, M.D. and
Eric Cure, M.D., Appellants,

v.

Gary R. McINTYRE, Sr., Administrator
of the Estate of Suzanne McIntyre,
Deceased, Appellee.

No. 49A02–9011–CV–656.

Court of Appeals of Indiana,
Second District.

Aug. 5, 1992.

Caroline Gilchrist, Cohen & Malad, P.C., Indianapolis, Kevin Murray, Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellant John R. Malooley, M.D.

Steven J. Cohen, Tipton Cohen & Koch, Indianapolis, for appellant Eric Cure, M.D.

Marshall S. Hanley, Olivia A. Napariu, Mitchell Hurst Jacobs & Dick, Indianapolis, for appellee.

SULLIVAN, Judge.

This is an interlocutory appeal from the trial court's denial of motions for summary judgment filed by defendants Dr. John Malooley (Dr. Malooley) and Dr. Eric Cure (Dr. Cure).

We reverse.

The issue certified by the trial court for our review is:

> "Whether summary judgment is proper in a medical malpractice action where there is no expert evidence that the conduct complained of was a factor in the resultant damages."   Record at 61.

Suzanne McIntyre (McIntyre) was admitted to University Heights Hospital on July 19, 1986, complaining of head and neck pain.   She was evaluated and treated by Dr. Malooley, a neurologist.   While there, McIntyre underwent EEG and CT scan tests, both of which produced abnormal results.   Dr. Malooley released McIntyre after prescribing physical therapy and medication.   McIntyre subsequently received several chiropractic treatments before she again visited the University Heights Hospital Emergency Room on August 20, 1989, complaining of severe headaches.   She was examined by Dr. Cure who, after consulting with Dr. Malooley, prescribed pain medication and released her.   The next day,

McIntyre was taken to the Methodist Hospital Emergency Room complaining of head and neck pain, nuchal rigidity, photophobia, and disorientation.   Dr. Malooley ordered another CT scan and a lumbar puncture, after which McIntyre was admitted to the Neuro Constant Care Unit at Methodist Hospital.

McIntyre remained neurologically stable during her hospitalization and even showed signs of improvement;   she remained awake, alert, and oriented.   On August 26, 1986, McIntyre underwent surgery, in which a clip ligation of a carotid artery aneurism was performed.   McIntyre died at Methodist Hospital on August 29, 1986.

On March 11, 1987, Gary McIntyre, Sr., Administrator of the Estate of Suzanne McIntyre (Estate), filed a Proposed Complaint for Damages against Dr. Cure and Dr. Malooley alleging medical malpractice.   In accordance with the provisions of I.C. 16–9.5–9–1 and I.C. 16–9.5–9–2 (Burns Code Ed.1990) the Estate's claim was submitted to a medical review panel consisting of Dr. Jeffrey Hilburn (Dr. Hilburn), Dr. Scott Shapiro (Dr. Shapiro), and Dr. Michael French (Dr. French).   After conducting hearings, the Panel issued its Opinion, relevant parts of which read as follows:

"OPINION OF PANEL MEMBERS, DR. HILBURN AND DR. FRENCH

1.   The evidence does not support the conclusion that defendants, Dr. Silva and University Heights Hospital, failed to meet the appropriate standard of care as charged in the complaint.

2.   The evidence supports the conclusion that defendant, Dr. Cure, failed to meet the appropriate standard of care as charged in the complaint.

3.   As to defendant, Dr. Malooley, there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury.

4.   As to defendants, Dr. Cure and Dr. Malooley, the conduct complained of was not a factor of the resultant damages.

s/ Jeffrey W. Hilburn, M.D.

s/ Michael W. French, M.D.

## OPINION OF PANEL MEMBER, DR. SHAPIRO

1. The evidence does not support the conclusion that defendants, Dr. Silva and University Heights Hospital, failed to meet the appropriate standard of care as charged in the complaint.

2. The evidence supports the conclusion that defendant, Dr. Cure, failed to meet the appropriate standard of care as charged in the complaint.

3. As to defendant, Dr. Malooley, there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury.

4. As to defendants, Dr. Cure and Dr. Malooley, it is not possible to determine from the evidence submitted, whether or not the conduct complained of with respect to Dr. Cure and Dr. Malooley was or was not a factor of the resultant damages.

s/ Scott A. Shapiro, M.D."

Record at 30–31.[1]

After the Panel issued its Opinion the Estate filed suit, incorporating virtually the same allegations as were presented to the Panel. On February 19, 1990 Dr. Malooley filed a Motion for Summary Judgment, and on March 15, 1990 Dr. Cure also filed a Motion for Summary Judgment. Each motion was premised upon the same argument: 1) no member of the Panel had found a causal link between McIntyre's death and the actions of Drs. Malooley and Cure; and 2) in its civil suit the Estate presented no expert opinion, indeed presented no evidence of any kind which would indicate such a causal link. The trial court denied both motions and the instant appeal ensued.

In summary judgment proceedings the trial court must decide which matters before it have been placed in issue from the pleadings, and must examine the evidentiary matter contemplated by T.R. 56(C) which

has been submitted by the parties. The probative value of such matter is to be determined without attributing weight or credibility. *Burke v. Capello* (1988) Ind., 520 N.E.2d 439, 441. Rational assertions of fact and reasonable inferences must be taken as true. *Id.* If the trial court's examination reveals that there is no material issue of genuine fact upon an essential element of the claim, judgment as a matter of law may be appropriate. Our task upon review of the trial court's decision in such matters follows the same process.

Appellants' Motions for Summary Judgment were each supported by the Panel's Opinion, made admissible as evidentiary matter by statute. I.C. 16–9.5–9–9 (Burns Code Ed.1990). The Estate did not offer any evidentiary matter, such as affidavits or answers to interrogatories, in support of its opposition to the motions for summary judgment. Appellants contend that the Panel's Opinion was sufficient to satisfy their burden to demonstrate that there was no genuine issue of material fact upon the question of proximate cause. They contend that the burden then shifted to the Estate to offer facts through medical experts that the actions of Drs. Malooley and Cure were a proximate cause of McIntyre's death. The Estate counters that medical expert testimony is not always necessary upon the question of causation. Further, it argues that the Panel's Opinion reflected a conflict upon the question of causation, and that this conflict itself indicates the existence of a material issue of fact as to causation.

### A. *Evidentiary Burdens*

Medical malpractice cases are no different from other kinds of negligence actions regarding that which must be proven. The complainant must establish 1) that the health care provider owed a duty, 2) which was breached by virtue of conduct which fell below the applicable standard of care and 3) which proximately caused a compensable injury. *Stumph v. Foster*

---

1. The record does not reflect what, if any, connection Dr. Silva had with the events involved in this lawsuit.

(1988) 4th Dist., Ind.App., 524 N.E.2d 812, 814. We acknowledge that negligence cases are rarely disposed of by summary judgment. *Id.* at 815. The initial burden is upon the summary judgment movant to show that there is no genuine issue of material fact. *Bassett v. Glock* (1977) 2d Dist., 174 Ind.App. 439, 368 N.E.2d 18, 21. When the defendant is the moving party and can show that there is no genuine issue of material fact as to any one of the aforementioned elements, the defendant is entitled to summary judgment as a matter of law. *See, e.g., Yaney by Yaney v. McCray Memorial Hospital* (1986) 3d Dist., Ind. App., 496 N.E.2d 135, 138. The quantum of proof necessary to sustain this burden is not susceptible to succinct description, but rather must be decided on a case-by-case basis.

In order to meet their burden, Drs. Cure and Malooley offered the Panel opinion, signed by Drs. French and Hilburn, which stated that the actions of Cure and Malooley did not proximately cause McIntyre's death. The Panel's Opinion amounts to little more than experts' conclusions upon the question of proximate cause. Indeed, there is nothing in the record, aside from implications which may be drawn from the allegations of fact contained in the Complaint for Damages, which explains the basis for those opinions. The record does not contain the materials which the Panel members considered in forming their opinions, nor does the Opinion detail the Panel's rationale. Nonetheless, the Panel's Opinion is, by statute, factual material appropriately considered in summary judgment proceedings. Moreover, the Opinion is in the form prescribed by the statute. Therefore, the trial court was bound to accept the conclusory Opinion as competent evidence that the actions of Cure and Malooley did not proximately cause McIntyre's death. This analysis necessarily leads to the conclusion that Appellants presented sufficient evidence to meet their burden

and to shift to the Estate the burden of demonstrating the existence of a genuine issue as to causation. *Watson v. Medical Emergency Services* (1989) 2d Dist., Ind. App., 532 N.E.2d 1191, 1193, *trans. denied.*

Although the burden of going forward with evidentiary matter was shifted, the Estate was under no obligation to present evidence sufficient to prevail upon its claims in the context of a full-blown trial. It was, however, obliged to establish a sufficient basis upon which the court might find the existence of a genuine triable issue with respect to the question of proximate cause. *Bassett v. Glock, supra,* 368 N.E.2d at 23. Appellants contend that the Estate did not meet this burden because it offered no expert opinion evidence to refute the conclusion stated in the Panel's Opinion. The Estate in fact offered only a brief containing legal arguments.[2] The only evidence before the trial court which supported the Estate's position upon the issue of proximate cause, then, *were* the facts alleged (and for purposes of summary judgment, taken as true) in the Estate's Complaint for Damages.

### B. *Expert Opinion*

The Estate argues that it is not always necessary to offer expert testimony as to causation. In particular, the Estate relies on the following passage from *Bassett v. Glock, supra:*

"[T]he substantive law requires expert opinion as to the existence and scope of the standard of care which is imposed upon medical specialists and as to whether particular acts or omissions measure up to that standard of care.

This is not to say that the ultimate issue for resolution, i.e., negligence, rests within the exclusive domain of expert witnesses. It is only to say that before the trier of fact may confront the factual question the issue must be presented and

---

**2.** It is true that the Estate referred to Dr. Shapiro's separate opinion in support of its argument. A medical review panel's opinion may properly be disputed by the contrary opinion of a member of the same review panel. *Spencer v. Chris-*

*tiansen* (1990) 2d Dist., Ind.App., 549 N.E.2d 1090, 1092, *trans. denied.* However, as discussed *infra,* Dr. Shapiro's opinion merely shows lack of unanimity but not such factual conflict as to support the Estate's position.

placed in controversy by reference to expert opinion." 368 N.E.2d at 23.

We first observe that *Bassett* addressed the need for expert opinion upon the issue of the appropriate medical standard of care, not as to the issue of legal causation. However, even if we were to broaden *Bassett's* applicability to include the question of proximate cause, it does not lend support to the Estate's argument. At best (from the Estate's perspective), *Bassett* indicates that a plaintiff must put forth *some* evidence upon an issue on which the defendant has successfully carried his initial summary judgment burden. *Bassett, supra,* 368 N.E.2d at 23. At worst, *Bassett* indicates that the evidence required to meet this burden must come in the form of expert testimony.

■ Nevertheless, the Estate argues that expert opinion evidence did indeed place the issue of causation in controversy. The Estate points out that only Drs. Hilburn and French concluded that the actions of Drs. Cure and Malooley were not a proximate cause of McIntyre's death. The Estate contends that Appellants "discounted" Dr. Shapiro's separate opinion, and "overlooked" the internal inconsistencies within the Opinion.

Dr. Shapiro concluded that he was unable to determine whether causation existed. Dr. Shapiro's opinion is not evidence which tends to support the Estate's allegation that there was a causative nexus between conduct and death. It *is* evidence, as the Estate contends, "that medical experts can differ on the essential element of causation." Brief of Appellee at 11. That proposition is beyond dispute, but it was incumbent upon the Estate to bring forth facts as to the actual existence of causation. Dr. Shapiro's conclusion in fact could be used to support the contention that the Estate could not find an affirmative proponent as to proximate cause. Put another way, the Panel's Opinion, including Dr. Shapiro's separate opinion, logically supports only two arguments: 1) that there was no causation, or 2) that causation could not be determined. Dr. Shapiro's opinion lends no support whatsoever to the argument that there was causation.

The Estate's argument that internal inconsistency within the majority's Opinion places causation in issue is equally unavailing. The Estate claims that paragraphs three and four of the majority's Opinion are inconsistent. Paragraph three states that as to Malooley there is a material issue of fact "bearing on liability for consideration by the court or jury." Record at 31. Paragraph four states that the actions of Malooley and Cure were not a factor in McIntyre's damages (death). The Estate contends that courts must draw any inferences in favor of the nonmoving party, and then argues that the court should infer that the unidentified issue of fact referred to in paragraph three may in fact be the issue of causation. In fact, the inferences which a court is compelled to draw in such instances have been variously characterized as "fair" (*Bassett, supra,* 368 N.E.2d at 21) and "reasonable" (*Burke, supra,* 520 N.E.2d at 442). The inference necessary to support the Estate's argument on this point is neither reasonable nor fair. The only reasonable inference to be drawn in light of the definitive conclusion of paragraph four is that the issue "bearing on" liability was the issue of negligence. Nothing contained in the Panel's Opinion places causation in issue.

■ Nonetheless, we agree with the Estate that expert opinion evidence is not always required in medical malpractice cases. Although not heretofore so-named, cases not requiring expert testimony are perhaps best characterized as fitting within the "common knowledge" exception to the need for expert testimony. In *Stumph v. Foster, supra,* 524 N.E.2d 812, a patient sued her chiropractor for broken ribs allegedly sustained during treatment. The chiropractor moved for summary judgment and offered in support his own affidavit that he was a licensed chiropractor and that his treatment of the plaintiff never fell below the appropriate standard of care. The plaintiff essentially rested upon her pleadings by submitting an affidavit reiterating facts already of record. The court

granted summary judgment to defendant, based in large part upon the patient's failure to present expert testimony to establish the standard of care. However, our Fourth District reversed, holding that expert testimony is not necessary in cases in which the facts are such that negligence may be inferred simply by resorting to common knowledge. Common knowledge, the court indicated, could lead a reasonable trier of fact to "infer that a careful chiropractor would not have broken Stumph's rib while manipulating her spine." *Stumph, supra,* 524 N.E.2d at 816.

Similarly our courts have occasionally dispensed with the need for expert opinion based upon the doctrine of *res ipsa loquitur.* In *Funk v. Bonham* (1932) 204 Ind. 170, 183 N.E. 312, the court applied *res ipsa* in holding that no expert evidence was necessary to prove that leaving a sponge inside a patient's abdomen after surgery was not skillful surgery. In *Shirey v. Schlemmer* (1967) 140 Ind.App. 606, 223 N.E.2d 759, *rev'd on other grounds,* 249 Ind. 1, 230 N.E.2d 534, expert evidence on the issue of standard of care was not necessary when a doctor refused to alter treatment after six months of therapy without improvement. In *Klinger v. Caylor* (1971) 148 Ind.App. 508, 267 N.E.2d 848, a patient's affidavit made on personal knowledge was sufficient to give rise to an inference of negligence when surgeons left fifteen inches of gauze inside a patient's leg after surgery.

The *Stumph* court quoted with approval the following, which serves as a useful summation of what we have herein referred to as the "common knowledge exception": "However, where negligence on the part of a doctor is demonstrated by facts which can be evaluated by resort to common knowledge, expert testimony is not required." *Stumph, supra,* 524 N.E.2d at 816, quoting *Mascarenas v. Gonzales* (1972) 83 N.M. 749, 497 P.2d 751, 753–54.

This principle was applied in the aforementioned cases only with respect to the question of whether the physician's conduct fell below the standard of care. Application of this exception in such cases is appropriate when limited to situations in which the complained-of conduct is so obviously substandard that one need not possess medical expertise in order to recognize the breach. It is otherwise when the question involves the delicate inter-relationship between a particular medical procedure and the causative effect of that procedure upon a given patient's structure, endurance, biological makeup, and pathology. The sophisticated subtleties of the latter question are not susceptible to resolution by resort to mere common knowledge. Moreover, even if it were appropriate in the instant case, the record provides no basis, beyond the factual allegations contained in the Complaint for Damages, upon which a layman's common knowledge might be focused.

When, as here, a medical malpractice civil suit is filed after a medical review panel has issued an opinion which finds against the complainant upon the issue of causation, and no member of the panel opines that causation does exist, the complainant proceeds in considerable peril if he rests upon the factual allegations contained in his complaint. The complainant must do more than rest upon his complaint.

The record before us contains competent admissible expert opinion that there was no causation. The record is entirely devoid of evidence from which the trial court could reasonably infer a causal link between the appellants' actions and McIntyre's death. Absent such evidence, the trial court erred in denying the appellants' motions for summary judgment.

This cause is remanded to the trial court with instruction to enter summary judgment in favor of Dr. Malooley and Dr. Cure.

BUCHANAN and MILLER, JJ., concur.