**Cody CHAMBERS, by Donna (Chambers) HAMM as Natural Mother and Next Best Friend, Appellants–Plaintiffs,**

**v.**

**Dr. Brandt LUDLOW and Bloomington Hospital, Appellees–Defendants.**

No. 53A01–9112–CV–386.[1]

Court of Appeals of Indiana, First District.

Sept. 16, 1992.

1. This case was transferred to this office on June 12, 1992 by order of the Chief Judge.

Robert D. Epstein and L. Michael Koch, Epstein & Frisch, Indianapolis, for appellants-plaintiffs.

Edna M. Koch, Tipton Cohen & Koch, Indianapolis, for appellees-defendants.

ROBERTSON, Judge.

Five (5) year-old Cody Chambers (by his mother and next best friend, Donna Chambers Hamm) appeals the adverse summary judgment in his medical malpractice suit against Dr. Brandt Ludlow and the Bloomington Hospital [Hospital]. One physician on the medical review panel opined that Dr. Ludlow and the Hospital failed to comply with the appropriate standard of care as charged in Cody's complaint. However, this panelist opined further that the conduct Cody "complained of was not a factor of the resultant damages." Cody submitted the affidavits of two (2) medical experts (physicians). One of Cody's physician experts opined that the medical care and treatment rendered to Cody and his mother by Ludlow and the Hospital care fell below a reasonable standard of care and resulted in the birth injuries about which Cody complains. Cody's other physician/expert opined that the injuries that Cody suffered at birth caused his mental retardation. We reverse.

## FACTS

In April of 1986, Cody's mother, Donna, consulted Dr. Ludlow for prenatal care during her pregnancy with Cody. Dr. Ludlow determined that she was then thirteen (13) weeks pregnant. On November 4, 1986, Donna went into labor and was advised by

Dr. Ludlow to report to the Bloomington Hospital. Several hours after Donna's admission to the Hospital, and after numerous attempts were made to deliver Cody naturally, a cesarean section was performed. Upon delivery, Cody was diagnosed as having severe metabolic acidosis, severe respiratory depression, seizures, and a possible intercranial hemorrhage. Cody is mentally retarded.

Cody's complaint alleges that his mental retardation is the result of the injuries he sustained during the birth process which were caused by the medical malpractice of Dr. Ludlow and the Hospital. Cody alleges in his complaint that Dr. Ludlow was careless and negligent as follows (pertinent parts only):

a. Failed to properly monitor the fetal heart tones of Infant Cody Chambers during the times relevant herein, including, but not limited to, his failure to employ the use of an electronic fetal monitoring device;

b. Failed to adequately and properly monitor the progress and conditions of both Donna (Chambers) Hamm and Infant Cody Chambers during the relevant period of time in question, which conduct includes, but is not limited to, Defendant's failure to properly monitor Donna (Chambers) Hamm's body temperatures, failure to order and obtain urinalysis, protein, and CBC blood tests upon Plaintiff's admission, or at any appropriate time thereafter;

c. Failed to properly and timely deliver Infant Cody Chambers;

d. Failed to maintain standing admitting orders at Bloomington Hospital concerning patients in labor, which standing admitting orders should include, but not be limited to, the use of an electronic fetal monitoring device, the taking of urinalysis, protein and CBC blood tests, and the taking of frequent body temperatures; and

e. Failed to possess and employ the skills, training and knowledge of others in his profession, and thereby rendered care and treatment to Plaintiffs which fell below a reasonable standard of care expected of those in his profession.

Cody alleges in his complaint that the Hospital was careless and negligent as follows (pertinent part only):

a. Failed to properly monitor the progress and conditions of both Donna (Chambers) Hamm and Infant Cody Chambers during the relevant times in question, which conduct included, but was not limited to, Defendant's failure to obtain and record more frequent body temperatures and fetal heart tones, failure to obtain urinalysis, protein and CBC blood tests upon admission or at any other appropriate time thereafter;

b. Failed to provide adequate care and precautions to protect Donna (Chambers) Hamm and Infant Cody Chambers from exposure to fetal distress conditions;

c. Failure to provide adequate care and treatment to Donna (Chambers) Hamm and Infant Cody Chambers for the timely and proper delivery of Infant Cody Chambers;

d. Failed to require obstetricians practicing at Bloomington Hospital to maintain standing admission orders concerning labor patients, which standing orders should include, but not be limited to, the use of an electronic fetal monitoring device, the taking of urinalysis, protein and CBC blood tests, and the taking of frequent body temperatures; and

e. Failed to possess and employ the skills, training and knowledge of others in the profession, and thereby rendered care and treatment to Plaintiffs which fell below a reasonable standard of care expected of those in that profession.

Cody's proposed complaint was submitted to the medical review panel of the Indiana Department of Insurance. Two of the doctors on the panel opined that the evidence did not support the conclusion that Ludlow's and the Hospital's care fell below the applicable standard of care. However, one of the panelists, Dr. Alan R. Gillespie, M.D., opined that Ludlow and the Bloomington Hospital failed to comply with the appropriate standard of care as charged in Cody's proposed complaint.

However, Gillespie opined further that the "conduct complained of was not a factor of the resultant damages."

Cody then filed his complaint in the trial court below. Ludlow and the Hospital moved for summary judgment submitting the medical review panel's opinion. In resistance to summary judgment, Cody submitted the affidavits of two (2) physicians. The affidavit of Dr. Mark Landon, M.D., reads in pertinent part as follows:

1. That I am a Board Certified licensed physician practicing medicine in the City of Columbus, State of Ohio.

2. That I specialize in the area of obstetrics, and I am on the teaching staff at the Ohio State University Medical Center.

3. That I have reviewed all of the relevant medical records of Donna (Chambers) Hamm concerning the medical treatment rendered to her at Bloomington Hospital dating from her admission on November 3, 1986, through her discharge on November 12, 1986.[2]

4. That I have reviewed all of the relevant medical records of Cody Chambers concerning the medical care and treatment rendered to him dating from his admission to Bloomington Hospital on November 4, 1986, through and including his transfer to Riley Children's Hospital in Indianapolis.

5. That a review of these medical records reveals that upon Donna (Chambers) Hamm's admission to Bloomington Hospital, she was 42 weeks gestation, her blood pressure registered 154/108, her pulse was 72, and her temperature was recorded at 98°.

6. A further review of these medical records indicates that no urinalysis or test for protein in the urine was ever obtained for Donna (Chambers) Hamm, either upon admission or at any point during this intrapartum period, and a CBC was not performed until 7:42 a.m. on November 4, 1986, nearly eight and

one-half hours after Donna (Chambers) Hamm's admission to Bloomington Hospital.

7. That a further review of these medical records indicates that no electronic fetal monitoring device was ever utilized during the intrapartum period of Donna (Chambers) Hamm.

8. That a further review of these medical records reveals that Donna (Chambers) Hamm's condition of being 42 weeks gestation and exhibiting extremely high blood pressure readings strongly indicates preeclampsia.

9. That a further review of these medical records reveals that Dr. Brandt Ludlow was responsible for the medical care and treatment of Donna (Chambers) Hamm and Cody Chambers during this intrapartum period up to the time of the trial by forceps and performance of the cesarean section.

10. That it is my opinion, based upon a reasonable degree of medical certainty, that the medical care and treatment rendered to Donna (Chambers) Hamm and Cody Chambers by Dr. Brandt Ludlow and the Bloomington Hospital staff fell below a reasonable standard of care for the following reasons:

a. Dr. Brandt Ludlow and the Bloomington Hospital staff failed to utilize any electronic fetal monitoring during Donna (Chambers) Hamm's intrapartum experience, despite the strong indication of preeclampsia;

b. Dr. Brandt Ludlow failed to appropriately treat Donna (Chambers) Hamm's preeclamptic condition, in that Dr. Ludlow failed to administer, at a minimum, the use of magnesium sulfate as part of Donna (Chambers) Hamm's course of intrapartum treatment;

c. Dr. Brandt Ludlow and the Bloomington Hospital staff failed to recognize Donna (Chambers) Hamm's febrile

---

**2.** There would appear to be a discrepancy between the affidavits of Drs. Landon and Baum with regard to the date of Hamm's discharge. As set out above, Dr. Landon stated that Hamm was discharged on November 12, 1986. Dr. Baum stated in his affidavit that Hamm was discharged on December 12, 1986 (See Dr. Baum's affidavit, allegation 7 on page 7). It is not obvious from the briefs which date, if either, is correct.

condition at an earlier point in time, which earlier recognition would have allowed Dr. Brandt Ludlow to have appropriately treated, with antibiotics, this febrile condition;

d. Dr. Brandt Ludlow and the Bloomington Hospital staff failed to timely obtain admission urinalysis/protein and CBC tests to exclude preeclamptic or infectious conditions; and

e. Dr. Brandt Ludlow and the Bloomington Hospital staff improperly delayed and prolonged the delivery of infant Cody Chambers in view of Donna (Chambers) Hamm's preeclamptic condition.

11. That it is my further medical opinion, based upon a reasonable degree of medical certainty, that had the use of electronic fetal monitoring been employed, the resultant electronic tracing more probably than not would have revealed the seriousness of Cody Chambers' fetal condition during this critical intrapartum period.

12. That it is my further medical opinion, based upon a reasonable degree of medical certainty, that Cody Chambers' ultimate conditions and injuries, i.e., profound intrapartum asphyxia and severe residual metabolic acidosis, subgaleal bleed and hemorrhagic shock, were more probably than not caused by the inappropriate care rendered by Dr. Brandt Ludlow and the Bloomington Hospital staff.

Cody also submitted the affidavit of Dr. Richard Baum, M.D., which reads in pertinent part as follows:

1. That I am a licensed physician practicing medicine in the City of Austin, State of Texas.

2. That I am Board Certified both in Pediatrics, and by the sub-board of Neonatal Perinatal Medicine.

3. That from September 1970 through December 1983, I was Director of Neonatal Pediatrics at Methodist Hospital in Indianapolis, Indiana, specializing in neonatology.

4. That while both in Indiana and Texas, I have served on various committees pertaining to perinatal care.

5. That while in Indianapolis, Indiana, I was actively involved in teaching at the Methodist Hospital Graduate Medical Center and Indiana University School of Nursing.

6. That while in Texas, I have been a member of the Perinatal Advisory Board at the School of Nursing, University of Texas at Austin.

7. That I have reviewed all relevant medical records of Donna (Chambers) Hamm concerning her medical treatment at Bloomington hospital [sic], dating from her admission on November 3, 1986 through her discharge on December 12, 1986.

8. That I have reviewed all relevant medical records of Cody Chambers concerning the medical care and treatment rendered to him at Bloomington Hospital dating from his birth on November 4, 1986 through and including his transfer to Riley Children's Hospital in Indianapolis, Indiana.

9. That Cody Chambers had both admission blood gases and subsequent clinical course consistent with profound intrapartum asphyxia.

10. That Cody Chambers, in addition, sustained a severe subgaleal bleed and associated hemorrhagic shock, the seeds of which would have to have been planted during the birth process.

11. That it is my medical opinion, based upon a reasonable degree of medical certainty, that the aforementioned conditions and injuries suffered by Cody Chambers are proximately and causally related to his current severe neurological deficits and retarded development.

The trial court noted in its entry of summary judgment that Dr. Gillespie's medical review opinion was insufficient to stave off summary judgment because it failed to satisfy the element of proximate cause in Cody's prima facie case of medical malpractice. The trial court noted further that neither the affidavit of Dr. Landon nor that of Dr. Baum could supply evidence on this missing element (or any other element) because neither doctor's affidavit set out the appropriate standard of care for Blooming-

ton, Indiana as required by Indiana's then existing modified locality rule.[3]

## DECISION

■ When we review a trial court's ruling on a motion for summary judgment, we are bound by the same standard as the trial court: we must consider all of the designated pleadings, affidavits, depositions, admissions, answers to interrogatories, and testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by a trier of fact. Ind.Trial Rule 56(C); *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229, 1294. A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. *Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313. If we have any doubts, concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party. *Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59, 62. If no genuine issue of material fact exists, summary judgment is appropriate if the moving party is entitled to judgment as a matter of law. *Id.* The moving party bears the burden of showing the absence of a factual issue and his entitlement to judgment as a matter of law. *Norman v. Turkey Run Community School Corp.* (1980), 274 Ind. 310, 313, 411 N.E.2d 614, 615.

■ A medical malpractice case is rarely appropriate for disposal by summary judgment. *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18. To establish a prima facie case of medical malpractice, the plaintiff must demonstrate (1) a duty on the part of the defendant in relation to the plaintiff; (2) failure on the part of defendant to conform his or her conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189. Generally, in order to establish a claim of medical malpractice, the plaintiff must establish by expert medical testimony 1) the applicable standard of care required by Indiana law, 2) how the defendant doctor breached that standard of care, and 3) that the defendant doctor's negligence in doing so was the proximate cause of the injuries complained of. *Bethke v. Gammon* (1991), Ind.App., 590 N.E.2d 573. When the defendant doctor is the moving party and can show that there is no genuine issue of material fact as to any one of the aforementioned elements, the defendant doctor is entitled to summary judgment as a matter of law. *Malooley v. McIntyre,* (1992) 597 N.E.2d 314.

■ When the medical review panel opines that the plaintiff has failed to satisfy any one of the elements of his prima facie case, the plaintiff must then come forward with expert medical testimony to refute the panel's opinion in order to survive summary judgment. *Id.; Stackhouse v. Scanlon* (1991), Ind.App., 576 N.E.2d 635, *trans. denied.* The opinion of the medical review panel is admissible as evidentiary matter for the purposes of sum-

---

**3.** During the briefing period, our supreme court abandoned the modified locality rule in *Vergara by Vergara v. Doan* (1992), Ind., 593 N.E.2d 185. Upon the motions of Dr. Ludlow and the Hospital, we permitted the parties to file additional briefs to respond to this development. The new standard of care required by doctors as enunciated in *Vergara* is:

a physician must exercise that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which he belongs, acting under the same or similar circumstances.

593 N.E.2d at 187. This new standard uses locality as but one of the factors to be con-

sidered in determining whether the doctor acted reasonably. *Id.* Other relevant considerations would include advances in the profession, availability of facilities, and whether the doctor is a specialist or general practitioner. *Id.* Our supreme court noted that its new formulation of a doctor's duty was a relatively modest alteration of existing law. *Id.* at 188. Dr. Ludlow and the Hospital concede that the new standard is to be given prospective application as expressed in the *Vergara* decision and by the application of the new standard in *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189 decided by our supreme court the same day as *Vergara.*

mary judgment under IND.CODE 16–9.5–9–9. *Malooley*, 597 N.E.2d 314. In *Malooley*, the medical review panel opinion established, for purposes of summary judgment, that two defendant doctors and a hospital breached the applicable standard of care as charged in the complaint. However, the medical review panel opinion failed to establish the element of proximate cause in the plaintiff's prima facie case opining that the doctors' "conduct complained of was not a factor of the resultant damages." We held that the doctors and hospital were entitled to summary judgment as a matter of law because the plaintiff failed to come forward with expert medical testimony to refute the panel's opinion on the issue of proximate cause. *Id.*

■ Not surprisingly, Dr. Ludlow and the Hospital assert that, despite the abandonment of Indiana's modified locality rule, the affidavits of Dr. Landon or Dr. Baum are nevertheless inadmissible for purposes of summary judgment under T.R. 56(E) because they fail to set out the applicable standard of care under Indiana law. We express no opinion whether either the affidavit of Dr. Landon or Dr. Baum adequately sets out the applicable standard of care under Indiana law. We hold that such determination is unnecessary as the medical review opinion of Dr. Gillespie, admissible under I.C. 16–9.5–9–9, establishes for purposes of summary judgment that Dr. Ludlow and the Hospital failed to comply with the appropriate standard of care as charged in Cody's complaint. Dr. Gillespie's opinion establishes all but the third element of Cody's prima facie case, the element of proximate cause. Under this procedural posture, Cody may survive summary judgment by establishing through expert medical testimony that the medical negligence charged in his complaint was the proximate cause of his complained-of injuries and damages. *Malooley, id.; Bethke*, 590 N.E.2d 573.

■ Dr. Ludlow and the Hospital have cited no authority, nor are we aware of any, to the effect that every element of the prima facie case of medical malpractice must be satisfied by *one* expert opinion.

We agree with Cody's argument that there are certain circumstances in medical malpractice cases in which expert testimony would be more properly fractionated among more than one expert than unified within a single expert's opinion. Cody argues in his brief:

For example, suppose a general surgeon negligently administers [a drug] so as to cause the death of the patient. It would be appropriate for a general surgeon to testify as to the standard of care, and any breach thereof concerning the administration of [the drug]. However, [plaintiff Chambers suggests] that a forensics pathologist or medical pharmacologist would be better qualified than a general surgeon to render expert testimony concerning the proximate cause of the patient's death.

Another instance where this multiple expert approach would seem beneficial is in the field of plastic surgery and medical malpractice cases involving silicone gel breast implants. While a plastic surgeon could qualify to testify as to the standard of care, any breach thereof and possibly proximate cause, [Plaintiff Chambers suggests] that a pathologist would be better qualified to render expert opinions as to the damages proximately caused by the implant.

■ There can be no serious dispute that Dr. Landon and Dr. Baum qualify as medical experts. In determining whether a witness qualifies as an expert, the following elements must be established: (1) the subject of the opinion or inference must be so distinctly related to some science, profession, business, or occupation as to be beyond the ken of laymen; and (2) the witness must have sufficient skill, knowledge, or experience in that field so as to make it appear that his opinion or inference will aid the trier of fact in his search for the truth. *Stackhouse*, 576 N.E.2d 635. As set out in their affidavits, Dr. Landon is a board certified physician specializing in obstetrics and Dr. Baum is a board certified physician specializing in pediatrics and neonatology. We would suggest that perhaps Cody is correct in his assertion that

Dr. Baum, as an expert in neonatology, the study of newborn disease and injury, is especially qualified to render an expert opinion regarding the proximate cause of Cody's injuries and mental retardation. Regardless of whether either Dr. Landon or Dr. Baum are qualified to testify regarding the applicable standard of care that Dr. Ludlow and the Hospital are to be held to under Indiana law, we believe their affidavits are sufficient under T.R. 56(E) to establish for purposes of summary judgment that the alleged medical malpractice was the proximate cause of Cody's alleged injuries and mental retardation; that is, we hold the affidavits in question are competent to establish, for purposes of summary judgment, that the specific conduct that Cody characterizes in his complaint as medical malpractice was the proximate cause of his complained-of injuries and mental retardation.

It is unnecessary to perform a detailed analysis of the technical medical evidence proffered in this case. We have set out the allegations of Cody's complaint and the affidavits of Drs. Landon and Baum in great detail in order to make it clear that the proffered evidence tracks the specific allegations. As stated earlier, Dr. Gillespie's medical review panel opinion establishes, for the purposes of summary judgment, that Dr. Ludlow and the Hospital failed to comply with the appropriate standard of care as charged in the complaint. An examination of Dr. Landon's affidavit reveals that he is of the opinion that the medical care and treatment of Dr. Ludlow and the Hospital fell below a reasonable standard of care for, among other reasons, the improperly delayed and prolonged delivery of Cody—one of the precise allegations of negligence set out in Cody's complaint. Dr. Landon opined further that the substandard care of Dr. Ludlow and the Hospital caused Cody's ultimate conditions and injuries, including, among other problems, severe metabolic acidosis, and a subgaleal bleed—again, precise birth injuries which Cody alleged in his complaint as flowing from the alleged medical negligence. Dr. Baum's affidavit may very well be lacking in any allegation of medical negligence.

However, Dr. Baum opined that Cody's birth injuries, including the severe subgaleal bleed and associated hemorrhagic shock, proximately caused the severe neurological deficit and retarded development alleged in Cody's complaint.

In summary, Dr. Gillespie's opinion that Dr. Ludlow and the Hospital failed to comply with the applicable standard of care is admissible and establishes that element of Cody's prima facie case for purposes of summary judgment. I.C. 16–9.5–9–9; *Malooley*, 597 N.E.2d 314. Similarly, Dr. Gillespie's opinion that the medical malpractice of Dr. Ludlow and the Hospital did not result in the damages about which Cody complained is admissible but not conclusive. *Id.* However, Dr. Landon's affidavit states that the medical malpractice alleged in Cody's complaint was the proximate cause of the birth injuries alleged in Cody's complaint. Dr. Baum's affidavit states that Cody's birth injuries were the proximate cause of his mental retardation.

■ Through the submission of the expert medical opinions of Drs. Landon and Baum, Cody has successfully controverted Dr. Gillespie's medical review panel opinion that the complained-of medical malpractice was not the proximate cause of Cody's alleged injuries. Therefore, a genuine issue of material fact exists regarding every element of Cody's prima facie case of medical malpractice. Justice thus requires a trial.

Judgment reversed.

SHIELDS and CONOVER, JJ., concur.