Pamela **HOSKINS**, Appellant–Plaintiff,

v.

Gary **SHARP**, M.D., Appellee–Defendant.

No. 30A01–9308–CV–259.

Court of Appeals of Indiana,
First District.

March 3, 1994.

Rehearing Denied April 28, 1994.

Thomas E.Q. Williams, Greenfield, for appellant-plaintiff.

Robert J. Shula, Richard S. Pitts, Lowe Gray Steele & Hoffman, Indianapolis, for appellee-defendant.

NAJAM, Judge.

### STATEMENT OF THE CASE

Pamela Hoskins brings this appeal from the entry of summary judgment for Gary Sharp, M.D., in a medical malpractice action arising from Sharp's treatment of her late husband, James Hoskins. Pamela filed a proposed complaint with the Indiana Department of Insurance pursuant to the Medical Malpractice Act (the "Act")[1] alleging that Dr. Sharp was negligent in his care of James. After the trial court had ruled on various discovery and other motions, Pamela's challenge to the constitutionality of the Act and a dispute over formation of the medical review panel, the panel rendered its unanimous opinion that the evidence did not support the conclusion that Dr. Sharp failed to meet the applicable standard of care charged in the complaint. Pamela then filed a complaint in the trial court, specifically alleging that Dr.

---

1. The Indiana Medical Malpractice Act, Indiana Code § 16–9.5–1–1 *et seq.*, has been repealed and recodified as Indiana Code §§ 27–12–1–1 *et seq.*, effective July 1, 1993. All citations in this opinion shall be to the former version of the Act in effect when the suit was filed.

Sharp was negligent because he failed to refer James to a hematologist "due to the possibility of the diagnosis of acute leukemia" which she alleged caused his death. Dr. Sharp moved for summary judgment and submitted only the panel's opinion in support of his motion. Pamela submitted affidavits and letters, James' medical records and his cause of death report in opposition to the motion. The trial court entered summary judgment for Sharp.

We reverse.

### ISSUES

1. Whether Dr. Sharp waived the statutory requirement of a medical review panel by asking the trial court to compel the formation of two properly constituted medical review striking panels.

2. Whether the trial court had jurisdiction to order the panel chairman to form striking panels constituted as provided in the Act.

3. Whether the Act is constitutional.

4. Whether Dr. Sharp is entitled to summary judgment as a a matter of law.

### FACTS

Dr. Sharp, a specialist in family practice, treated James from approximately 1976 until James' death in June of 1989. In February of 1989, James submitted to a blood test that Dr. Sharp had ordered which revealed an abnormally low platelet count. That result was unchanged from a blood test which Sharp had ordered in 1985, which had also revealed a low platelet count. In May of 1989, James, then 45, was admitted to the emergency room of Hancock Memorial Hospital in serious condition. He was then treated by Dr. Sharp and other physicians, and was diagnosed with severe encephalopathy.[2] One of the treating physicians noted in James' medical records that James also had a history of alcohol abuse. James was later

transferred to Community Ritter Hospital in Indianapolis where he was diagnosed with acute promyelocytic leukemia. James remained hospitalized until his death on June 18, 1989.

### DISCUSSION AND DECISION

#### Issue One: Waiver of Medical Review Panel

■ Pamela first contends Dr. Sharp waived his right to have Pamela's claim presented to a medical review panel. She asserts that Dr. Sharp refused to accept the striking panels selected by the panel chairman and instead obtained a court order requiring a panel "under other conformity." She argues that where voluntary compliance with the formation of a panel becomes "impossible" and a trial court is asked to intervene in the panel selection process, the informal procedure contemplated by the Act has failed and the statutory right to a medical review panel should be deemed waived. We cannot agree.

■ Generally, no action against a health care provider may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel established pursuant to the Act and an opinion has been rendered by the panel.[3] IND.CODE § 16–9.5–9–2(a). A claimant can waive this requirement in only one prescribed manner. "A claimant may commence an action in court for malpractice without the presentation of the claim to a medical review panel if the claimant and all parties named as defendants in the action agree that the claim is not to be presented to a medical review panel." IND.CODE § 16–9.5–9–2(b). That agreement must be in writing and must be signed by each party or the authorized agent of a party. *Id.* A copy of the agreement must be attached to the complaint filed with the court in which the action is commenced. *Id.*

2. Encephalopathy is generally described as any disease of the brain. *Stedman's Medical Dictionary* 508 (25th ed. 1990).

3. However, "a patient may commence an action against a health care provider for malpractice without submitting a proposed complaint to a

medical review panel if the patient's pleadings include a declaration that the patient seeks damages from the health care provider in an amount no greater than fifteen thousand dollars ($15,-000)." IND.CODE § 16–9.5–9–2.1(a).

Here, there was no written agreement between the parties for waiver of a medical review panel. In fact, in his motion opposing plaintiff's motion for further instruction, Dr. Sharp stated, "the Defendant rejects Plaintiff's offer to waive the panel formation in this case." Record at 161. The evidence also shows that Dr. Sharp did not simply refuse to accept the striking panels selected by the panel chairman but only insisted that the panels be composed of qualified physicians as provided under the Act. *See* IND. CODE § 16–9.5–9–3(b)(1) (when one defendant is specialist in particular area of medicine, two member of review panel are required to be health care professionals specializing in same area as the defendant). Sharp merely insisted upon compliance with Indiana Code § 16–9.5–9–3(b)(1), and we can discern no waiver from his insistence that the medical review panel be composed of at least two members from his medical specialty.

Pamela asks that we fashion a common law waiver rule which would apply when the parties are unable voluntarily and informally to select a medical review panel. She suggests that this waiver rule should be applied in a case such as this one where the procedure "while followed by the parties in good faith, has broken down due to a requirement that reasonably necessitates a court opinion." Brief of Appellant at 11. We decline to fashion such a rule where the legislature has narrowly prescribed the circumstances under which an effective waiver occurs under Indiana Code § 16–9.5–9–2(b). Dr. Sharp did not waive his right to a medical review panel merely by insisting upon compliance with the Act.

4. Indiana Code § 16–9.5–9–3(b)(1) provides that if there is only one party defendant who is an individual, two of the panelists selected must be members of the profession of which the defendant is a member, and if the individual defendant is a health care professional who specializes in a limited area, two of the panelists selected must be health care professionals who specialize in the same area as the defendant. Sharp filed a motion with the trial court asking the court to issue an order compelling the formation of two medical review striking panels composed of family practitioners. When confronted with such a motion, the medical review panel chairman is required to appoint a striking panel consisting of three qualified health care professionals for each

**Issue Two: Trial Court's Jurisdiction**

Pamela next disputes the trial court's order directing the panel chairman to form two striking panels of family practitioners. The court ordered the formation of new striking panels because the striking panels previously submitted by the panel chairman contained only one qualified physician in contravention of Indiana Code § 16–9.5–9–3(b)(1).[4] Pamela contends that the court interfered with the informal panel formation process and exceeded its jurisdiction under Indiana Code § 16–9.5–10–1.

The Act invests the courts with limited jurisdiction over medical malpractice claims until the medical review panel has rendered its opinion. *Surgical Associates, Inc. v. Zabolotney* (1992), Ind.App., 599 N.E.2d 614, 615, *trans. denied.* The Act provides that "any party to the proceeding may invoke the limited jurisdiction of the court by paying the statutory filing fee to the clerk and filing a copy of the proposed complaint and motion with the clerk." IND. CODE § 16–9.5–10–2. A court having jurisdiction over the subject matter and the parties to a proposed complaint filed with the Commissioner of Insurance may, upon the filing of a copy of the proposed complaint and a written motion, (1) preliminarily determine any affirmative defense or issue of law or fact that may be so determined under the Indiana Rules of Procedure; or (2) compel discovery in accordance with the Indiana Rules of Procedure; or (3) both. IND. CODE § 16–9.5–10–1.

On December 3, 1990, Pamela invoked the jurisdiction of the Hancock Circuit Court by filing a motion for a discovery order.[5] Pame-

party. IND.CODE § 16–9.5–9–3(b)(3). Here, the medical review panel chairman had appointed two striking panels; however, only one of the six health care professionals named to these panels was a family practitioner like Sharp. The trial court granted Sharp's motion and ordered the panel chairman to compose two new striking panels with a sufficient number of family practitioners, pursuant to Indiana Code § 16–9.5–9–3(b)(1) and (3).

5. The docket sheet entry states only that, "Plaintiff files motion for discovery order." Record at 2. The record does not disclose that Pamela filed a copy of the proposed complaint with the

la does not dispute the composition of the panel as it was finally established or allege any defect in the panel's operation. Pamela cannot show that the medical review panel deliberations did not comply with the statutory requirements or that she was prejudiced in any way by the trial court's order directing the panel chairman to form striking panels properly composed of a sufficient number of family practitioners. *See Jordan v. Deery* (1993), Ind., 609 N.E.2d 1104, 1108–09.

Pamela cites *Griffith v. Jones* (1992), Ind., 602 N.E.2d 107, for her position, although *Griffith* is inapposite. In *Griffith*, the trial court had instructed the medical review panel concerning the definition of terms and phrases used in the Act, the evidence that the panel could consider in reaching its opinion and the form and substance of its opinion. *Id.* at 109. Our supreme court held that the trial court exceeded its jurisdiction and interfered with the informal operation of the medical review panel as contemplated by the legislature. *Id.* However, in the present case, the panel had not yet been formed, and the trial court did not instruct the panel or interfere in any manner with its operation. The court did not dictate to the panel concerning the content of the panel's opinion, the manner in which the panel should arrive at its opinion, or the matters that the panel could consider in arriving at its opinion. *See Griffith*, 602 N.E.2d at 110. Instead, the court merely acted to facilitate selection of a panel by ordering compliance with the specific statutory requirements for panel formation.

We conclude that it was permissible for the trial court to invoke its jurisdiction for this limited purpose under Indiana Code § 16–9.5–10–1. If the trial court in any way intruded upon the informality of the panel formation process, it was harmless error.

### Issue Three: Constitutionality of Medical Malpractice Act

■ Pamela's third claim is that the Medical Malpractice Act is unconstitutional because the panel selection process is unworkable "in a real life situation," although she

concedes that "the idea of the statute seems to have been upheld as ... constitutional." Brief of Appellant at 14; *see Johnson v. St. Vincent's Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585. Nevertheless, Pamela asserts that the deadlines, paperwork and other dictates of the Act render it an "impossible law" and that the scheme of the Act should be held unconstitutional, if not per se, then in its actual operation and effect. Brief of Appellant at 14. The trial court rejected Pamela's argument, and we are bound by our supreme court's decision in *Johnson*. Pamela's position on this issue is without merit.

### Issue Four: Summary Judgment

Finally, Pamela asserts that evidentiary materials she submitted to the trial court create a genuine issue of material fact precluding summary judgment in favor of Dr. Sharp.

■ When reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *City of Evansville v. Moore* (1990), Ind., 563 N.E.2d 113, 114. Our role on appeal includes a careful scrutiny of the trial court's determination to assure that the non-prevailing party is not improperly prevented from having his day in court. *Id.*

■ Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Lucas v. Stavos* (1993), Ind.App., 609 N.E.2d 1114, 1116, *trans denied*. The moving party bears the burden of proving the nonexistence of a genuine issue of material fact, and if there is any doubt, the motion should be resolved in favor of the party opposing the motion. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190. "Once the movant has sustained this burden, however, the opponent may not rest upon the mere allegations or denials in his pleadings, but must

court. Since the court considered the motion and other motions filed by the parties, and neither party addressed this issue, we shall assume

without deciding that the proposed complaint was before the court and that the court's jurisdiction over the case was properly invoked.

respond by setting forth specific facts showing that there is a genuine issue for trial." *Id.;* Ind.Trial Rule 56(E).

■ A medical malpractice case based upon negligence is rarely an appropriate case for disposal by summary judgment. *Chambers By Hamm v. Ludlow* (1992), Ind.App., 598 N.E.2d 1111, 1116; *Bassett v. Glock* (1977), 174 Ind.App. 439, 442, 368 N.E.2d 18, 20. This is especially true when the critical question for resolution is whether the defendant exercised the degree of care due under the factual circumstances. *Bassett,* 174 Ind. App. at 442, 368 N.E.2d at 20.

■ To prevail in a medical malpractice action, the plaintiff must prove three elements: "(1) a duty on the part of the defendant in relation to the plaintiff; (2) failure to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." *Oelling,* 593 N.E.2d at 190; *Ludlow,* 598 N.E.2d at 1116. When the defendant doctor moves for summary judgment and can show the there is no genuine issue of material fact as to any one of these elements, the defendant is entitled to summary judgment as a matter of law unless the plaintiff can establish, by expert testimony, a genuine issue of material fact for trial. *See Ludlow,* 598 N.E.2d at 1116.

■ Here, in support of his motion for summary judgment, Dr. Sharp submitted only the medical review panel opinion. The panel determined that the evidence did not support the conclusion that the defendant failed to meet the applicable standard of care charged in the complaint. The opinion of the medical review panel is admissible as evidentiary matter for the purposes of summary judgment. IND.CODE § 16-9.5-9-9. Thus, the panel opinion was sufficient to satisfy Dr. Sharp's initial burden of showing no genuine issue of material fact on the standard of care issue. *See Oelling,* 593 N.E.2d at 190. The burden of proof then shifted to Pamela to respond by designating evidentiary matter which demonstrated a genuine issue for trial. *See id.*

■ On appeal, Pamela relies solely upon an affidavit of Dr. Brenda Woods, a family practitioner, and a letter from Dr. Ronald Hoffman, a hematologist and oncologist, in opposition to Dr. Sharp's motion for summary judgment. Sharp contends that these documents could not be considered by the trial court as evidentiary material because they "were not in compliance with the Trial Rules and case authority." Appellee's Brief at 28. However, we need not address whether Dr. Hoffman's letter is proper evidentiary material under Trial Rule 56(C) because we conclude that Dr. Woods' affidavit is, standing alone, sufficient evidence to withstand Dr. Sharp's motion for summary judgment.

■ Dr. Woods' affidavit contains the following statement before her signature: "I affirm the truth of the above statements." According to Dr. Sharp, Dr. Woods' affidavit was not properly verified because it was not notarized. We must disagree.

■ An affidavit has been defined as a written statement of fact which is sworn to as the truth before an authorized officer. *Jordan v. Deery* (1993), Ind., 609 N.E.2d 1104, 1110. The chief test of the sufficiency of an affidavit is its ability to serve as a predicate for a perjury prosecution. *Id.* Affidavits in support of or in opposition to a motion for summary judgment must first be properly verified. Trial Rule 11(B) provides:

"When in connection with any civil or statutory proceeding it is required that any pleading, motion, petition, supporting affidavit, or other document of any kind, be verified, or that an oath be taken, it shall be sufficient is the subscriber simply affirms the truth of the matter to be verified by an affirmation or representation in substantially the following language:

'I (we) affirm, *under penalties for perjury,* that the foregoing representation(s) is (are) true. (Signed) __'...." (emphasis added).

In *Jordan,* our supreme court held that a doctor's affidavit was sufficient to subject the doctor to prosecution for making a false affidavit when it stated, "Affiant ... being duly sworn upon her oath alleges and says: ...," although the affiant did not swear that the statements she made were true. *Jordan,* 609 N.E.2d at 1109–10. The court distin-

guished *Jordan* from other cases involving statutory verification requirements. *Id.* at 1109–10. It explained that there is no singular statutory rule regarding proper verification of an affidavit filed in connection with summary judgment proceedings, and "although Trial Rule 11 provides one method for binding an affiant to his oath, compliance with its provisions is not required." *Id.* at 1110. We conclude that Dr. Woods' words, "I affirm the truth of the above statements," meets the "chief test" from *Jordan* that the affidavit will subject her to a perjury prosecution if any of her statements are false.[6] Therefore, Dr. Woods' affidavit is properly verified.

■ We must next consider whether Dr. Woods' affidavit is substantively sufficient to create a genuine issue of material fact on the issue of breach of the standard of care. Trial Rule 56(E) requires that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Ind.Trial Rule 56(E). In addition, "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *Id.* In a medical malpractice case, an opposing affidavit submitted to establish an issue of fact on the standard of care issue must demonstrate the expert's familiarity with the applicable standard of care, set out that standard of care and state that the treatment in question fell below that standard. *Oelling,* 593 N.E.2d at 190; *Ellis v. Smith* (1988), Ind.App., 528 N.E.2d 826, 829. It is not enough to state the expert would have treated the patient differently. *Oelling,* 593 N.E.2d at 191.

Dr. Woods' affidavit stated that she was a board certified family practice physician and that she had reviewed the hematology report on James prepared by Hancock Memorial Hospital. Her opinion was (1) that she found the white blood cell count, red blood cell count and platelet count were low; (2) that she concluded a referral to a hematologist would be warranted and a consultation to determine the cause should be undertaken; (3) that such a referral would be the standard of care of family practitioners and that a failure to do so would fall below the requisite standard of care of a family practitioner at the time of the hematological report in that locale of medical practice; and (4) that she would not conclude the blood test depicted an alcoholic, although that possibility would need to be considered.

■ Dr. Woods' affidavit established an issue of material fact concerning whether Dr. Sharp's conduct fell below the applicable standard of care. The affidavit met the requirements of 56(E) because it demonstrated that it was made based upon Dr. Woods' personal knowledge of James' hematology report, it set forth facts admissible in evidence and it showed that Dr. Woods, as a board certified family practitioner, was competent to testify to what in her opinion the standard of care was under these circumstances. *See Winbush v. Memorial Health System, Inc.* (1991), Ind., 581 N.E.2d 1239, 1243–44. Dr. Woods' affidavit was also sufficient because it demonstrated a familiarity with the applicable standard of care, stated what that standard was and affirmatively stated that conduct such as Dr. Sharp's would fall below that standard of care. Dr. Woods' opinion went beyond a mere assertion that she would have treated James in a different manner. *Cf. Oelling,* 593 N.E.2d at 191 (affidavit stating doctor himself would have treated patient differently held insufficient to demonstrate issue of fact on breach of standard of care). While Dr. Woods' affidavit could have been more complete, it was nevertheless sufficient to carry Pamela's burden of showing the existence of an issue of material fact on breach of the standard of care.[7]

---

6. Indiana's perjury statute provides that a person who makes a false, material statement under oath or *affirmation,* knowing the statement to be false or not believing it to be true, commits perjury, a Class D felony. IND.CODE § 35–44–2–1.

7. Dr. Sharp contends that Dr. Woods' affidavit was equivocal on whether the standard of care was met because she states that James' alleged alcohol abuse was a "possibility" which would need to be considered. Brief of Appellee at 29–30. However, that statement does not affect the

■ We cannot agree with Dr. Sharp's contention that because the medical review panel found no breach of the standard of care, Pamela was obligated to present an expert opinion establishing each element of her claim. Brief of Appellee at 26. We first note that whether Dr. Sharp owed James a duty of care is not disputed in this case, and we conclude as a matter of law that Dr. Sharp owed James such a duty as his family doctor. *See Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995 (whether duty exists in negligence action is question of law). Also, while Dr. Sharp's submission of the medical review panel opinion shifted the burden of going forward with evidentiary matter to Pamela, she "was under no obligation to present evidence sufficient to prevail upon [her claim] in the context of a full blown trial." *Malooley v. McIntyre* (1992), Ind.App., 597 N.E.2d 314, 317. Rather, when the medical review panel opines that the plaintiff has failed to satisfy any one element of her prima facie case, the plaintiff is only required to "come forward with expert medical testimony to *refute the panel's opinion* in order to survive summary judgment." *Ludlow,* 598 N.E.2d at 1116 (emphasis added); *see Malooley,* 597 N.E.2d at 317.

As we noted in *Watson v. Medical Emergency Services* (1989), Ind.App., 532 N.E.2d 1191, *trans. denied,* our inquiry is whether Dr. Sharp showed the "undisputed nonexistence of at least one of these elements." *Id.* at 1193. Dr. Sharp met his initial burden by designating the medical review panel opinion that there was no breach of the applicable standard of care. However, Pamela countered with Dr. Woods' expert opinion that Dr. Sharp had breached the standard of care. Pamela successfully refuted the panel's opinion and survives summary judgment because Dr. Sharp failed to establish the undisputed nonexistence of the element of breach of the standard of care. *See Ludlow,* 598 N.E.2d at 1116; *Watson,* 532 N.E.2d at 1193.

Contrary to Dr. Sharp's contention, Pamela was not required to present expert medical evidence on the issue of proximate cause.

sufficiency of Dr. Woods' opinion on breach of the standard of care but instead goes to the issue

*See* Brief of Appellee at 26. The medical review panel opinion consisted of a form, prescribed by statute, with four possible opinions from which the panel could have selected. Pursuant to the instructions on the form, three of the opinions were crossed out and one was selected, which read: "The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care charged in the complaint." The panel's opinion is silent on the issue of proximate cause.

The medical review panel opinion was the only expert opinion tendered by Dr. Sharp, and it is insufficient to establish that no genuine issue of fact exists on the issue of proximate cause because it concerns only the applicable standard of care. Accordingly, while Pamela, through Dr. Woods' affidavit, failed to present an expert opinion that Dr. Sharp's negligence was the proximate cause of James' death, she was not required to do so. Dr. Sharp, not Pamela, had the initial burden of negating the proximate cause element of Pamela's claim. Thus, the burden never shifted to Pamela. Pamela alleged in her complaint that Dr. Sharp's negligence was the proximate cause of James' injuries, and she was entitled to rest on her pleadings on that issue. *See Whitten v. Kentucky Fried Chicken Corp.* (1991), Ind.App., 570 N.E.2d 1353, 1359, *trans. denied* ("unless and until movant makes showing that there is a lack of a material factual issue, nonmoving party may rest upon allegations of pleadings").

Therefore, we conclude that a genuine issue of material fact remains on the standard of care issue. The existence of a genuine issue of material fact on at least one element of Pamela's claim precludes the entry of summary judgment in Dr. Sharp's favor. *See Oelling,* 593 N.E.2d at 1193.

## CONCLUSION

We hold that the trial court had jurisdiction to order compliance with the statutory procedures for formation of a medical review panel, that Dr. Sharp did not waive his right

of proximate cause.

to a medical review panel, and that the Act is constitutional. However, we hold that summary judgment in favor of Dr. Sharp was error. A genuine issue of material fact remains regarding whether Dr. Sharp breached the requisite standard of care when he failed to refer James to a hematologist.

We reverse and remand for proceedings consistent with this opinion.

BAKER and RUCKER, JJ., concur.