**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JAMES E. AYERS**
Wernle, Ristine & Ayers
Crawfordville, Indiana

ATTORNEYS FOR APPELLEE:

**PATRICK P. DEVINE**
**SCOTT B. COCKRUM**
Hinshaw & Culbertson LLP
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BARBARA LASKOWSKI, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1205-PL-235 |
| | ) | |
| AMER KAZI, M.D., | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Evan S. Roberts, Judge
Cause No. 20D01-1104-PL-17

**July 16, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

Barbara Laskowski ("Laskowski") appeals the grant of summary judgment in favor of Amer Kazi, M.D. ("Dr. Kazi") on her medical malpractice claim.

We affirm.

ISSUE

Whether the trial court erred in granting summary judgment in favor of Dr. Kazi.

FACTS

The designated evidence shows that Laskowski suffered from pain in her neck and shoulder due to arthritis. In May of 2005, Laskowski sought treatment from Dr. Kazi, a board certified neurologist and pain management physician. Dr. Kazi treated Laskowski with a cervical epidural containing Depo Medrol, Marcaine, and Lidocaine. Dr. Kazi performed the procedure using a fluoroscope to confirm the appropriate injection area, aspirating the area with the needle of the syringe.[1] When Laskowski's arthritis pain returned, she again sought another epidural from Dr. Kazi on November 14, 2006.

In preparation for the procedure on the 14th, Laskowski laid on a table with her head down waiting for Dr. Kazi to begin the injection. At some point, Laskowski began to feel dizzy, complained of chest pain, and thought that she was going to pass out. Laskowski claims that the symptoms began as soon as Dr. Kazi began the injection, and she requested that he stop the procedure. However, Laskowski later testified during her

---

[1] A fluoroscope is "an instrument used to view the form and motion of the internal structures of the body by means of roentgen rays." BLAKISTON'S GOULD MEDICAL DICTIONARY 518 (4th ed. 1935). Roentgen rays are essentially X-rays. Aspiration is "the withdrawal by suction of fluids . . . from a cavity as with an aspirator. *Id*. at 126.

deposition that she was not sure when Dr. Kazi began the injection. Dr. Kazi testified during his deposition that Laskowski did not begin to complain of symptoms until after the injection was complete. Medical records designated by Laskowski revealed that after the procedure, Laskowski's vital signs were normal. She had some complaints of numbness in her arms, but her grip remained normal. Almost an hour later, Laskowski complained of chest pains and dizziness after going to the restroom. She was wheeled back to a recovery room and the medical staff noted that she had an elevated heart rate. Another doctor who treats Laskowski was contacted and recommended transport to an emergency room.

Laskowski submitted a proposed complaint alleging that Dr. Kazi had negligently performed the procedure to a Medical Review Panel ("the Panel"). On January 25, 2011, the members of the Panel unanimously concluded that Dr. Kazi had not breached the standard of care in his treatment of Laskowski. Nonetheless, Laskowski filed her complaint against Dr. Kazi in the Elkhart Superior Court on April 25, 2011, claiming that Dr. Kazi failed to use ordinary skill, care, and diligence used by similar healthcare providers. Dr. Kazi responded on June 6, 2011, admitting that he is a health care provider as defined by law, that he performed a cervical epidural with Laskowski's consent, and denying that he violated the applicable standard of care or caused her injuries.

On June 30, 2011, Dr. Kazi filed a motion for summary judgment, claiming that there was no genuine issue of material fact as to whether he violated the applicable standard of care in his treatment of Laskowski. In support of his motion, Dr. Kazi

3

designated the opinion of the Panel, which concluded that he had not breached the standard of care. On October 31, 2011, Laskowski filed her response to Dr. Kazi's motion for summary judgment, designating the affidavit of Alexander Weingarten, M.D. ("Dr. Weingarten"), the depositions of Laskowski and Dr. Kazi, and portions of her medical records.

Wanting an opportunity to question Dr. Weingarten about his affidavit, the trial court granted Dr. Kazi's request to schedule a deposition on January 9, 2012. At his deposition, Dr. Weingarten testified that, notwithstanding his declaration in the affidavit, he had not reviewed Dr. Kazi's deposition until two days prior to his own deposition. Further, when asked if he was taking everything Laskowski said in her deposition as true, Dr. Weingarten responded, "[a]gain I would have to say yes because hopefully it was taken under oath, and I hope that everything that she said was true, yes." (App. 106). Conversely, when asked about Dr. Kazi's testimony, Dr. Weingarten stated that "it would depend on what one talks about. But obviously his version of the events are a little different than her version of the events. So it would be questionable as to whether everything he says, you know, is true." *Id.* In addition, Dr. Weingarten testified that he had no problem with the way Dr. Kazi performed the procedure up until Laskowski developed symptoms. However, Dr. Weingarten declared in his affidavit that Dr. Kazi violated the standard of care by not ceasing the injection when Laskowski directed him to do so. On the other hand, Dr. Weingarten acknowledged in his deposition that there were no medical records suggesting (1) that Dr. Kazi performed the procedure in the wrong location; (2) that there was medication left in the syringe when Laskowski began

4

complaining of symptoms; or (3) that Dr. Kazi continued with the procedure despite Laskowski's protests. Furthermore, Dr. Weingarten's initial review of Laskowski's treatment stated the following:

> I spoke with attorney. [sic] The patient was complaining of pain and dizziness during a cervical epidural injection. She went from office to hospital. There is no apparent evidence that the doctor did anything wrong other than completing the procedure which was done according to standard. Mr. Ayers will speak to his client, get more information and get back with me since there is no evidence that if she stopped sooner she would have avoided a hospital visit. Of note, no abnormalities found at the hospital. [sic]

(App. 85, 125).

On, February 23, 2012, Dr. Kazi filed a motion to strike the affidavit of Dr. Weingarten, claiming that his opinions were not admissible under Ind. Evidence Rule 702. On April 24, 2012, the trial court entered an order striking Dr. Weingarten's affidavit. The order stated in relevant part:

> Dr. Alexander Weingarten's deposition testimony indicates that the opinions he expressed in his affidavit were based on speculation. Dr. Weingarten testified that he did not have any "major criticisms as to how the procedure was being performed up to the time that the patient developed, you know, the issues that she developed." Dr. Weingarten then simply accepts as true the Plaintiff's version of events which were not verified or supported by any facts contained in the medical records and further formed his opinions without a complete knowledge and understanding of the Plaintiff's medical conditions as he failed to review the Plaintiff's entire medical history.
>
> The Court is not satisfied that the opinion testimony provided by Dr. Weingarten in the affidavit provided to this Court is reliable under 702. Accordingly, the Court GRANTS Defendant's Motion to Strike the Affidavit of Dr. Weingarten.
>
> A medical review panel was formed and rendered its unanimous opinion on January 25, 2011 finding that the evidence did not support the conclusion

5

that the Defendant failed to comply with the appropriate standard of care. The Plaintiff has not designated evidence that shows the Defendant failed to conform his conduct to the requisite standard of care required. After striking the Affidavit of Dr. Alexander Weingarten, M.D., no genuine issue of material fact remains and the Defendant is entitled to summary judgment as a matter of law. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment.

(App. 9).

Laskowski filed her notice of appeal on May 23, 2012.

## DECISION

Laskowski claims that the trial court erred in striking the affidavit submitted by Dr. Weingarten. Specifically, Laskowski states the trial court "made a detailed, if incorrect, evaluation of the issue of causation, and because the Trial Court does not agree with Dr. Weingarten's conclusions, as to causation it has 'struck' his Affidavit . . . ."[2] (Laskowski Br. 9). Laskowski also appears to claim that the trial court erred by evaluating Dr. Weingarten's affidavit under the standard for expert scientific testimony provided in Evid. R. 702(b) instead of 702(a), allowing expert testimony based on skill and experience.

> When we review a trial court's ruling on a motion for summary judgment, we are bound by the same standard as the trial court: we must consider all of the designated pleadings, affidavits, depositions, admissions, answers to interrogatories, and testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by a trier of fact. A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. If we have any doubts, concerning the existence of a genuine issue of material fact, we must

---

[2] We note that the trial court's order specifically stated that it made no findings on the issue of causation.

resolve those doubts in favor of the nonmoving party. If no genuine issue of material fact exists, summary judgment is appropriate if the moving party is entitled to judgment as a matter of law.

A medical malpractice case is rarely appropriate for disposal by summary judgment. To establish a prima facie case of medical malpractice, the plaintiff must demonstrate (1) a duty on the part of the defendant in relation to the plaintiff; (2) failure on the part of defendant to conform his or her conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure. Generally, in order to establish a claim of medical malpractice, the plaintiff must establish by expert medical testimony (1) the applicable standard of care required by Indiana law, (2) how the defendant doctor breached that standard of care, and (3) that the defendant doctor's negligence in doing so was the proximate cause of the injuries complained of. When the defendant doctor is the moving party and can show that there is no genuine issue of material fact as to *any* one of the aforementioned elements, the defendant doctor is entitled to summary judgment as a matter of law.

When the medical review panel opines that the plaintiff has failed to satisfy *any* one of the elements of his prima facie case, the plaintiff must then come forward with expert medical testimony to refute the panel's opinion in order to survive summary judgment. The opinion of the medical review panel is admissible as evidentiary matter for the purpose of summary judgment under Ind. Code [§ 34-18-10-21]. . . . .

*Chambers by Hamm v. Ludlow*, 598 N.E.2d 1111, 1116 (Ind. Ct. App. 1992) (emphasis added).

Here, Dr. Kazi submitted the certified opinion of the Panel finding that he had met "the applicable standard of care as charged in the complaint." I.C. § 34-18-10-22(b)(2). As a result, Dr Kazi satisfied his initial burden of showing there was no genuine issue of material fact as to one element of Laskowski's claim -- the standard of care. *See Chambers*, 598 N.E.2d at 1116. The burden then shifted to Laskowski to designate expert testimony that created a genuine issue of material fact. *See id*.

7

Attempting to meet this burden, Laskowski designated the affidavit of Dr. Weingarten who opined that Dr. Kazi had not met the applicable standard of care. However, the trial court struck the affidavit as not being reliable under Evid. R. 702(b). Laskowski argues that the trial court erred because Dr. Weingarten's affidavit was admissible under Evid. R. 702(a), as his testimony was based on his skill and experience and not scientific principles.

The decision to admit or exclude evidence is within the discretion of the trial court, and this court reviews the trial court's decision for an abuse of discretion. *Lachenman v. Stice,* 838 N.E.2d 451, 464 (Ind. Ct. App .2005), *trans. denied.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable and actual deductions to be drawn therefrom. *Id.* The guidelines for the admission of expert opinion testimony are found in Evid. R. 702, which provides the following:

> (a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

> (b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Where expert testimony is based upon the expert's skill or experience, the proponent of the testimony must only demonstrate that the subject matter is related to some field beyond the knowledge of lay persons and the witness possesses sufficient skill, knowledge or experience to assist the fact finder to understand the evidence or decide a

8

fact in issue. *Lytle v. Ford Motor Co.*, 814 N.E.2d 301, 308 (Ind. Ct. App. 2004), *trans. denied*. When an expert's testimony is based on scientific principles, the proponent of the testimony must also establish that those principles upon which the testimony rests are reliable. *Id*. Thus "it is apparent that Indiana Evidence Rule 702 assigns to the trial court a 'gatekeeping function' of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id*. While there is no definite "test" to satisfy the requirements of Rule 702(b), whether a theory or technique can be empirically tested and has been submitted to peer review and publication are relevant considerations in evaluating such expert testimony. *Hannan v. Pest Control Services, Inc.*, 734 N.E.2d 674, 679 (Ind. Ct. App. 2000), *trans. denied*.

In this case, Laskowski's argument is similar to one made by the plaintiff in *Lytle*. There, Lytle, his wife Kyong, and their daughter, Michelle, were travelling in their Ford pickup truck when it was struck by another vehicle. Lytle claimed that Kyong wore her seatbelt, yet she was ejected from the vehicle. Kyong suffered permanent brain damage, while Lytle and Michelle, both restrained by seat belts, sustained minor injuries. Lytle later filed a complaint against Ford alleging that Kyong's injuries were caused by a design defect in Ford's seat belts. Specifically, Lytle claimed the buckle was defectively placed so that it would come apart easily with contact from Kyong's clothes or body. Ford responded by claiming that their seatbelt design was not defective and that Kyong was not wearing her seatbelt. Ford moved to exclude the testimony of all of Lytle's proffered experts on the grounds that their testimonies were neither scientifically reliable nor based on other reliable analysis or knowledge and thus would not assist the jury. The

9

trial court excluded the testimony of Lytle's experts, finding that Lytle failed to present sufficient evidence in accordance with Evid. R. 702(b). On appeal, Lytle asserted that Evid. R. 702 applies different standards in evaluating testing based on scientific principles versus expert testimony based on skilled observation and experience. Indeed, this Court and our Indiana Supreme Court have evaluated expert testimony in the same manner. *See PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 741 (Ind. Ct. App. 2004), *trans. denied*; *Malinski v. State*, 794 N.E.2d 1071 (Ind. 2003); *McGrew v. State*, 682 N.E.2d 1289 (Ind. 1997). However, in *Lytle*, we ultimately found that "[u]nder Indiana Evidence Rule 702(a), *all* expert testimony, and not merely scientific testimony subject to Rule 702(b), must be reliable and relevant to the issues at hand. *Lytle*, 814 N.E.2d at 314. (emphasis in original). Using this framework, we found that Lytle's experts were not reliable under either section of Evid. R. 702. *Id.*

Applying the same rationale used in *Lytle*, we find that the trial court did not abuse its discretion in striking Dr. Weingarten's affidavit. Dr. Weingarten stated repeatedly throughout his deposition that he relied on Laskowski's deposition to arrive at his conclusions, while acknowledging that none of the medical records he reviewed substantiated his findings. In fact, Dr. Weingarten went as far as subjectively judging the credibility of the parties involved, assuming everything Laskowski stated was true, despite questions raised by her deposition testimony and medical records she designated. In addition, Weingarten speculated that Dr. Kazi injected the epidural "into an area of and compromised a thoracic nerve root, a sympathetic ganglion or blood vessel, causing the distress and ongoing symptoms." (App. 94). Yet, the designated evidence reveals that in

10

his initial review of Laskowski's medical records and deposition, Dr. Weingarten found that there was "no apparent evidence that the doctor did anything wrong other than completing the procedure which was done *according to standard*." (App. 85) (emphasis added). Finally, though Dr. Weingarten claimed under the penalty of perjury that in making his findings he reviewed Dr. Kazi's deposition, Dr. Weingarten admitted that he did not review Dr. Kazi's testimony until two days before his own deposition on January 9, 2012; more than two months after Dr. Weingarten signed the affidavit. Based on the facts and circumstances before the trial court, we find no error in striking Dr. Weingarten's affidavit.[3]

Having upheld the trial court's exclusion of Dr. Weingarten's affidavit, there is no admissible expert evidence to rebut the Panel's finding for Dr. Kazi. Accordingly, we affirm the trial court's grant of summary judgment in his favor.

Affirmed.

ROBB, C.J., concur.

MAY, J., dissent with separate opinion

---

[3] In a reply brief, Laskowski claims that her Exhibit 8, submitted as part of a supplemental designation of evidence, is a "procedural note created at the time of the procedure . . . ." (Laskowski Reply Br. 14). This is a mischaracterization of the record. In fact, Exhibit 8 is a portion of a form entitled "EMERGENCY ROOM TRANSFER RECORD." This form was previously designated by Laskowski in her original response to Dr. Kazi's motion for summary judgment. (App. 57) Further, when this record is compared to the other medical records designated by Laskowski, it appears the record was created after the procedure.

| | | |
|---|---|---|
| BARBARA LASKOWSKI, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1205-PL-235 |
| | ) | |
| AMER KAZI, M.D., | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |
| | ) | |
| | ) | |

**MAY, Judge, dissenting with separate opinion**

I believe Dr. Weingarten's affidavit should not have been stricken, as both the trial court and the majority of this panel appear to have based their decisions on Dr. Weingarten's credibility. As determinations of credibility are inappropriate on summary judgment, I must respectfully dissent.

The majority opinion appears to be premised on the Evid. R. 702(a) requirement that expert testimony be "reliable" and relevant to the issues at hand. (Slip op. at 10) (citing *Lytle v. Ford Motor Co.*, 814 N.E.2d 301, 314 (Ind. Ct. App. 2004), *reh'g denied, trans. denied*). The majority notes Dr. Weingarten "speculated," (*id.*), that Dr. Kazi caused Laskowski's symptoms by injecting the epidural in the wrong location. To the extent the majority opinion holds the affidavit could be stricken on that ground, it misses the mark.

12

I acknowledge Dr. Weingarten's affidavit includes his statements that Dr. Kazi might have injected the drugs into the wrong area and that might have caused Laskowski's problems. In light of the medical records, those opinions might, as the majority says, have been based on speculation.

But the method and location of the injection were not the violation of the standard of care Dr. Weingarten asserts in his affidavit, so the affidavit should not have been stricken on that basis. The violation of the standard of care Dr. Weingarten explicitly asserted in his affidavit was that Dr. Kazi did not stop the procedure when Laskowski told him to: "[I]t is my opinion that Dr. Kazi failed to meet the standard of care and failed to appropriately treat Ms. Laskowski *by failing to stop the cervical epidural steroid injection immediately when she first complained of symptoms*." (App. at 40) (emphasis added).[4]

The majority finds it significant that Dr. Weingarten "relied on Laskowski's deposition to arrive at his conclusions, while acknowledging that none of the medical records he reviewed substantiated his findings." (Slip op. at 10.) It does not surprise me that no "medical record" reflects Laskowski told Dr. Kazi to stop but he did not, and I do not believe an affidavit should be stricken at the summary judgment phase simply because an expert chose to believe the plaintiff. We should not affirm the trial court solely on the grounds Dr. Weingarten disregarded "medical records" and believed Laskowski.

---

[4] The majority characterizes Laskowski's argument as one based on the trial court's disagreement with Dr. Weingarten's conclusions as to "causation." (Slip op. at 6.) But as explained above, the violation of the standard of care about which Dr. Weingarten opined did not implicate "causation."

13

In reviewing this summary judgment we must consider the pleadings and evidence *without deciding weight or credibility*, and we must construe all evidence in favor of Laskowski. *See, e.g.*, *Indiana Dep't of Transp. v. McEnery*, 737 N.E.2d 799, 801-02 (Ind. Ct. App. 2000) (in determining whether there is a genuine issue of material fact, we accept as true all facts alleged by the nonmoving party, consider the pleadings and designated evidence without determining weight or credibility, construe all evidence in favor of the nonmoving party, and resolve all doubts as to the existence of a material issue against the moving party), *trans. dismissed*. The majority appears instead to judge Dr. Weingarten's credibility, concluding he was not credible because he chose, in the face of conflicting evidence, to believe Laskowski.

While the majority does not suggest Dr. Weingarten was biased, I think our reasoning in *Mitchell v. State*, 813 N.E.2d 422, 431 (Ind. Ct. App. 2004), *trans. denied*, is helpful. There, we noted that, under Rule 702, a witness may be qualified as an expert by virtue of "knowledge, skill, experience, training, or education," and only one of these characteristics is necessary to qualify an individual as an expert. Moreover, Rule 702(a) does not require that the witness be unbiased. *Id.*

Mitchell was charged with battery on a child and he offered his wife, a medical doctor, as an expert witness. The State objected on the ground she was not "an unbiased third party," *id.*, and the trial court decided she could not testify as an expert. We held that was error (though harmless in that case) because "the revelation of any actual bias

14

should have gone to the weight of [the doctor's] testimony rather than to her ability to testify -- assuming she was otherwise qualified -- as an expert witness." *Id*.

There does not appear to be any allegation or argument Dr. Weingarten is not qualified by virtue of "knowledge, skill, experience, training, or education," or that he might be biased. Instead, the majority appears to permit his affidavit to be stricken solely because he believed one party and not the other. As in *Mitchell*, his choice to believe Laskowski goes, at most, to the weight to be afforded that evidence by the trier of fact, and should not serve as a basis for striking his affidavit and depriving Laskowski of her day in court. *See also Scott v. City of Seymour*, 659 N.E.2d 585, 592-93 (Ind. Ct. App. 1995) (to the extent expert's statement was conclusory, "any lack of detail in the affidavit goes to the weight and credibility of the affidavit and not to whether it is adequate to create a genuine issue").

I believe the Weingarten affidavit creates a genuine issue as to Dr. Kazi's violation of the standard of care, and we have, at most, a question of the weight and credibility to be assigned to that affidavit. That question should be resolved by a trier of fact. Pursuant to *Mitchell*, Dr. Weingarten's credibility is not a basis for striking his statement that Dr. Kazi violated the standard of care because he did not stop the procedure when Laskowski told him to.

I must accordingly dissent.